362 So.2d 638 (1978)
Fay O. THOMPSON
v.
WELLS-LAMONT CORPORATION and Liberty Mutual Insurance Company.
No. 50589.
Supreme Court of Mississippi.
September 13, 1978.
Rehearing Denied October 4, 1978.
*639 Omar D. Craig, Oxford, for appellant.
Daniel, Coker, Horton, Bell & Dukes, Forrest W. Stringfellow, Gulfport, for appellees.
Before PATTERSON, C.J., and BROOM, and LEE, JJ.
BROOM, Justice, for the Court:
Workmen's compensation disability benefits were denied Fay O. Thompson, claimant, by the Circuit Court of Webster County in affirmance of the order of the Mississippi Workmen's Compensation Commission (and administrative judge). Only medical expenses were awarded the claimant. We reverse the denial of disability compensation.
Claimant, age forty-seven, had worked for Wells-Lamont for over sixteen years in its factory at Eupora, where her job was to sew up fingers of gloves. She experienced no ill effects of her work until in December 1971 when her chest started hurting and she had difficulty breathing. Dr. Gifford, a general practitioner in Eupora, saw her and prescribed cortisone which gave relief. Claimant had no prior history of asthma, but testified that about the time her condition manifested itself the plant was not being kept as clean as before, and that lint accumulated on all the equipment. After several recurrences of claimant's condition, Dr. Gifford (in June 1973) referred her to Dr. Moffitt, a specialist in allergic diseases, in Jackson, Mississippi. Dr. Moffitt tested her for allergy to the various fabrics and dyes with which she had come in contact in the factory, but all these tests were negative. Dr. Moffitt testified that, in his opinion, claimant had infectious asthma (an intrinsic rather than an extrinsic asthma). He could not pinpoint with certainty what caused her condition. Dr. Moffitt gave her aminophyllin, a bronchodialater; and then in the fall of 1974, after she developed an increased blood sugar, he gave her kenalog. Dr. Moffitt was of the opinion that her occupation could have had an effect on her condition, but was not able to put his finger on the exact relationship.
On July 11, 1974, Dr. Gifford finally recommended that claimant discontinue her factory employment. She quit as he advised, and after about six weeks she had no recurrences of the condition unless exposed to dust or lint. Claimant testified that in Webster County there are two furniture factories and a garment factory which employ women. She went to the garment factory and quickly experienced allergic reactions upon entering the factory. The furniture factories saw up wood to make the furniture and the implication is that these factories are dusty.
By job training claimant was qualified as a sewing machine operator. No factory in the county utilized her skills other than the garment factory, supra. She applied for a secretarial training program with the government, but was turned down because of too many applicants. She went to the Mississippi Employment Commission which referred her to two public school jobs, neither of which she got. One job was a teacher's aide job and the other was a librarian assistant, but her training would not qualify her for either. Since claimant stopped work at Wells-Lamont, her condition does not recur unless she is exposed to lint or dust. Her husband works at a boiler factory in West Point some forty miles from Eupora. Twenty-eight miles from Eupora in Winona is a shirt factory, and another shirt factory is in Ackerman, about twenty miles distant from Eupora, but *640 claimant has not applied for work at any of these other factories.
Dr. Gifford stated that the claimant, so far as her "job is concerned," was thirty to fifty percent permanently disabled. The final medical report of Dr. Moffitt indicated that Mrs. Thompson's condition was permanent in that her condition would have "exacerbations and remissions."
The administrative judge awarded her only medical expenses for treatment she received while working for Wells-Lamont. He awarded no disability payments, holding that she had reached maximum medical improvement within five days after quitting the job and thereafter suffered no permanent disability to the body as a whole. He also held that she had not demonstrated any loss of wage earning capacity as a result of the aggravation of the asthma caused by her occupational environment at Wells-Lamont. The workmen's compensation commission and the circuit court affirmed the order of the administrative judge, which order Wells-Lamont and its carrier argue was supported by substantial evidence.
WAS MRS. THOMPSON DISABLED WITHIN THE MEANING OF MISSISSIPPI CODE ANN. § 71-3-3(i) (1972), WHICH REQUIRES AN INABILITY TO EARN WAGES IN FORMER OR OTHER EMPLOYMENT? § 71-3-3(i) (1972) reads:
"Disability" means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or other employment, which incapacity and the extent thereof must be supported by medical findings.
It is conceded that Mrs. Thompson cannot return to her previous job because of her asthmatic reaction to the lint or some other substance in her prior work environment. The question here involves her ability to procure another job within the area after reasonable efforts.
Coulter v. Harvey, 190 So.2d 894, 897 (1966), held that a "claimant must seek, after the disability subsides, employment in another or different trade to earn his wages." The rationale of Coulter is that a disability such as contact dermatitis, which made it impossible for the claimant there to continue employment as a cement finisher due to his sensitivity to the chromates contained in the cement, would not render him incapable of working in all jobs, but only those involving contact with cement.
Mrs. Thompson argues that, based upon substantial evidence: (1) She has a general reaction to all dust and lint which makes it impossible for her to work in any environment where these occur; (2) she entered a garment factory in Eupora and experienced such a reaction; (3) the other factories in Eupora saw wood and therefore, because of the sawdust, she would be unable to work there; (4) the factories in the surrounding areas all have a dust or lint problem which would make it impossible for her to work in these places; (5) she attempted to get work in other fields but was unable to find employment, probably because she was not qualified; (6) therefore, she is disabled under the statute.
Here we must decide, having in mind our decision in Coulter, supra, if claimant made reasonable efforts after her disability subsided to obtain employment in another or different trade. The evidence shows that after she was unable to continue her employment at Wells-Lamont, she made certain efforts toward obtaining other employment. In her efforts she:
1. Went into a garment factory and immediately experienced allergic reaction (burning of her eyes, nose, and throat.)
2. Sought training for a secretarial job under a government sponsored program but was turned down.
3. Sought assistance of the State Employment Commission office, which referred her to a school for a job as a teacher's aide.
4. Applied for a job at the Webster County Library.
5. Sought aid of the State Employment Commission office in order to find a job, and her application there is still on file.
*641 What constitutes a reasonable effort to obtain employment is a matter not of easy definition, and what might be a reasonable effort in one situation might not be so in another. In determining whether one made a reasonable effort to obtain employment in the same or other occupation, several factors may be relevant, including: the economic and industrial aspects of the local community, the jobs available in the community and surrounding area, the claimant's general educational background, including work skills, and the particular nature of the disability for which compensation is sought. Considering the present record, we cannot say that either litigant introduced an abundance of meaningful evidence regarding these factors.
It is uncontradicted that Mrs. Thompson, upon the advice of her physician, had to terminate her employment with Wells-Lamont and did, in fact, seek other employment. As to the measure of proof required to establish that a claimant has made reasonable efforts to seek other employment, authority throughout the United States is divided. Likewise, there is great divergence of authority as to who has the burden of proof in showing the availability or unavailability of employment suitable to the claimant. Larson, Workmen's Compensation § 57.61 (1974). Larson notes that many courts hold that once a disability is proven, the employer must show that there is adequate available employment for the claimant, while in other states the burden of showing unavailability of such employment rests upon the claimant. We reject any notion that the claimant must assume the burden of showing the absolute unavailability of suitable employment by contacting every possible employer in the area. As we have always held, our workmen's compensation statutes must be liberally but fairly construed so as to carry out the beneficent purposes intended by the legislature. We cannot, and here do not attempt to, delineate any hard and fast rule as to how many or exactly what type efforts a claimant must make in every case in order to establish "disability" within the purview of § 71-3-3(i), supra.
The rule which we now adopt is: The claimant has the burden of proof to make out a prima facie case for disability, after which the burden of proof shifts to the employer to rebut or refute the claimant's evidence. After the burden shifts, evidence indicating that suitable employment was available to claimant becomes relevant and admissible. In such a posture, the employer may present evidence (if any) showing that the claimant's efforts to obtain other employment were a mere sham, or less than reasonable, or without proper diligence. Having proved her disability and established her training and experience, together with the fact that her efforts to obtain other employment failed, in the instant case Mrs. Thompson at least made out a prima facie case which Wells-Lamont failed to rebut or refute.
Whether the claimant has made out a prima facie case is a question to be decided by the trier of facts on the evidence presented. In Compere's Nursing Home v. Biddy, 243 So.2d 412 (Miss. 1971), the claimant made only one effort to obtain employment, and we held that this was not enough to make out a prima facie case. Our stated rule, that after the claimant makes out a prima facie case by showing reasonable efforts to find other employment, the burden shifts, is not only fair to the litigants, but has highly salutary aspects. The rule should encourage employers to assist their disabled employees in finding other employment, and at the same time require reasonable affirmative action by claimants to become gainfully employed.
We think the record before us demonstrates that upon substantial evidence the claimant made out a case of compensable disability, and that it was error not to award her any disability benefits. Medical proof in the record shows that claimant has a permanent disability rendering her functionally disabled from engaging in her employment. Therefore, the case will be reversed and remanded to the Commission to make determination of the extent of her disability and then award her benefits consistent with this opinion.
REVERSED AND REMANDED.
*642 PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, LEE, BOWLING and COFER, JJ., concur.