IN THE SUPREME COURT OF MISSISSIPPI
NO. 93-CC-00855-SCT

*FRANKIE LEE HALE*

*v.*

*RULEVILLE HEALTH CARE CENTER AND THE TRAVELERS INSURANCE COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/28/93 |
| TRIAL JUDGE: | HON. EUGENE M. BOGEN |
| COURT FROM WHICH APPEALED: | SUNFLOWER COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JOHN GRIFFIN JONES |
| | ROBERT L. CROOK |
| ATTORNEYS FOR APPELLEES: | ROY D. CAMPBELL |
| | RICHARD O. BURSON |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | REVERSED - 2/6/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 3/4/97 |

**BEFORE PRATHER, P.J., ROBERTS AND MILLS, JJ.**

**PRATHER, PRESIDING JUSTICE, FOR THE COURT:**

## I. INTRODUCTION

¶1. This workers' compensation case calls upon this Court to review the reversal by the Sunflower Circuit Court of a ruling of the Workers' Compensation Commission, which found the claimant to have suffered a five percent permanent partial disability. Finding the ruling of the Commission to be neither arbitrary nor capricious, this Court reverses the ruling of the circuit court and reinstates the ruling of the Commission. This Court also affirms the failure of the Commission to award total permanent disability benefits in light of the findings of fact of the Commission, which indicate a lack of diligence on the part of the claimant in securing additional employment.

## II. STATEMENT OF THE FACTS

¶2. On July 17, 1989, Frankie Lee Hale ("Hale") sustained an injury to her back while lifting a patient pursuant to her duties as a nurse's aide at the Ruleville Health Care Center in Ruleville, Mississippi. Hale had worked for Ruleville Health Care for nine years prior to her injury, and her job required her to perform a substantial amount of physical activity, including lifting patients, bending, and stooping

to retrieve items. Hale has only a ninth grade education, and she has never received a GED or any special training, thus seriously limiting her prospects for securing employment.

¶3. During her testimony before the Administrative Judge, Hale indicated that her prior back problems were limited to a back injury suffered in 1986, for which she missed approximately two weeks of work and received workers' compensation benefits. With the exception of this limited period, however, Hale claimed on direct examination to have had no back problems prior to or since 1986.

¶4. On cross-examination, however, it was revealed that, beginning in February 1984, Hale had sought treatment from Dr. Anne Brooks, an osteopathic physician. Dr. Brooks' records indicate that Hale had in February 1984 complained of pain in her legs, side, shoulder, and head. Dr. Brooks expressed an opinion in her deposition testimony that Hale suffered "from what we call a `sacrotortion.' It was the change in axis of the motion of the sacrum; so that instead of going forward commonly, evenly, it was torqued."

¶5. Dr. Brooks' records further indicate that Hale could recall "no unusual activity or trauma" which might have caused the pains she was experiencing. In September 1984, Hale returned to Dr. Brooks, complaining that she had hurt her back while lifting a patient at the Health Center. However, Dr. Brooks was of the opinion that Hale's problem was the result of abnormalities in her posture, which gave rise to "acute lumbosacral spasm." Dr. Brooks also noticed that, while Hale's sacrum had improved, she nevertheless suffered from a marked decrease in range of motion. Hale returned to Dr. Brooks in 1985 and in December 1987, complaining of further low back and leg pains as a result of lifting patients at work.

¶6. Hale returned to Dr. Brooks in April 1989, a few months prior to the injury with which the present appeal is concerned. Dr. Brooks reported that:

> On examination, I did not find the sacral problem that she previously had. She was bending forward at the waist approximately 30 degrees, although she was unable to side bend very much. There was again noted the increase in lordotic curve. She was quite tender from L-3 to L-5 on palpation and also on her right sciatic area. Both trapezius muscles were very tight and tender to palpation.

The record indicates that Dr. Brooks treated Hale months after her injury, but neither the plaintiff nor defendant questioned her as to her medical findings. On cross-examination, the plaintiff's attorney did elicit that Dr. Brooks considered Hale to be disabled and unable to perform her duties at the Health Center. However, Dr. Brooks did not testify that she considered Hale's disability to have resulted from having lifted patients, and her testimony indicated that she considered Hale's problems to be more of a structural nature.

¶7. Following her injury, Hale sought treatment from Dr. W. Craig Clark, a board certified neurosurgeon at the Semmes-Murphy Clinic in Memphis. Dr. Clark testified that he was unable, following a complete medical examination of Hale, to explain the cause of her back and leg pain. Dr. Clark further testified that Hale reached maximum medical improvement on September 25, 1990, and that she did not sustain any permanent impairment or limitation of function. When asked on direct examination whether he felt that Hale was exaggerating her symptoms, Dr. Clark responded that,

given that he was unable to find any medical cause for her complaints, "I guess the terminology best be used would be one maybe of symptom magnification."

¶8. The primary medical evidence cited by Hale in support of her claim was provided by Dr. Azordegan, a neurologist to whom Hale was referred by her attorney. Dr. Azordegan expressed his opinion that Hale had suffered two distinct injuries, namely a stretched "long posterior sacroiliac ligament" and bruising of the "lumbosacral joint." Dr. Azordegan further opined that Hale had reached maximum medical recovery on August 13, 1991, and that she sustained a five percent permanent partial impairment to her body as a whole and a lifting restriction.

¶9. The Health Center entered into evidence records which indicate that Hale had complained of or sought treatment for back pain on several occasions prior to the injury in question. The Ruleville Health Center records reveal that Hale had a extensive history of back and leg pains, including complaints of back injuries from lifting patients in December 1983 and September 1984. Hale complained of back pain again in May 1986, at which time she was treated by a Dr. Aquino at the North Sunflower County Hospital. Following a relapse three months later, Dr. Aquino referred Hale to a Dr. Warrington, who admitted her to Quitman County Hospital for treatment of a "lumbosacral strain."

¶10. Rosal Burden, Administrator at the Ruleville Health Care Center, revealed that, according to company records, Hale had worked full days on the three days following the accident from which the present case arose. Burden's testimony further revealed that Hale brought a return-to-work slip from a Dr. Barr, which stated that Hale could not lift more than twenty pounds for one month. According to Burden, she then informed Hale that the Health Center could provide her with light duty, such as cleaning closets and wheelchairs, which would not involve lifting. Hale responded that she was unable to bend over and thus unable to accept said light jobs. The return-to-work slip, however, contained no such restriction against bending.

¶11. Hale testified that her only other attempts to find employment were during a weekend in November 1991, approximately one month prior to the hearing before the Administrative Judge ("AJ"). The AJ noted in his ruling that "when confronted with the limited extent and duration of her work attempts, claimant then testified that she had made other `attempts' to find work before November 1991, but could only specifically recall one such effort."

### III. STATEMENT OF THE CASE

¶**12.** On January 14, 1991, Hale filed a petition to controvert, alleging that she was permanently and totally disabled as a result of a back injury sustained at work on July 17, 1989. The Health Center answered, admitting the compensability of the claim but denying that Hale had suffered any permanent disability resulting from the accident and asserting alternatively that any permanent disability was due to a pre-existing condition.

¶13. On July 29, 1992, the AJ, following a complete hearing held on December 19, 1991, entered an order awarding Hale temporary total disability benefits for a period beginning July 17, 1989, through August 13, 1991, and awarding Hale permanent partial disability benefits in the sum of $33.34 a week for 450 weeks beginning August 13, 1991. Hale appealed to the Full Commission, alleging that the AJ had erred in his determination of the extent of her permanent disability. The Health Center

cross-appealed, contending that Hale had reached maximum medical improvement as early as September 25, 1990, and that she had sustained no permanent disability.

¶14. Following a hearing on December 28, 1992, the Workers' Compensation Commission entered an order affirming without comment the AJ's order, and both parties filed an appeal to the circuit court from said order. On June 28, 1993, the Circuit Judge reversed the ruling of the AJ and Commission, finding that Hale had reached maximum medical improvement on September 25, 1990, and that she had suffered no permanent disability. Thereafter, Hale timely appealed to this Court.

## IV. LEGAL ANALYSIS

### A. Did the trial court err in reversing findings of facts of the Mississippi Workers' Compensation Commission and, instead, substituting its own findings of fact on disputed matters -- specifically, the existence of permanent anatomical impairment sustained by the claimant as a result of her admitted occupational injury -- thereby sustaining in whole appellees' contention on cross-appeal from the Commission order?

¶15. The function of the circuit court (and of this Court) on appeal from rulings of the Workers' Compensation Commission is to determine whether there exists a quantum of credible evidence which supports the decision of the Commission. It is not the role of the circuit courts to determine where the preponderance of the evidence lies when the evidence is conflicting, given that it is presumed that the Commission, as trier of fact, has previously determined which evidence is credible and which is not. *Metal Trims Industries, Inc. v. Stovall*, 562 So.2d 1293 (Miss. 1990). This highly deferential standard of review essentially means that this Court and the circuit courts will not overturn a Commission decision unless said decision was arbitrary and capricious. *Georgia Pacific Corp. v. Taplin*, 586 So.2d 823 (Miss. 1991).

¶16. Miss. Code Ann. §71-3-3(i) (1995) requires that a disability claim be supported by medical findings. The Circuit Judge considered the Commission's award of permanent partial disability benefits to be unsupported by medical evidence and accordingly reversed the Commission's award. The Circuit Judge set Hale's date of reaching maximum medical improvement at September 25, 1990, which is the date set by Dr. Clark for maximum improvement on the part of Hale.

¶17. The Commission based their ruling largely upon the opinion of Dr. Azordegan that Hale had reached maximum medical improvement on August 13, 1991, and that she suffered a five percent permanent disability. The Circuit Judge, however, considered this testimony of Dr. Azordegan to be unreliable based in part on the fact that Hale had not informed him fully of her past back troubles. Dr. Brooks had opined that any impairment which Hale suffered was as a result of pre-existing problems related to Hale's weight and posture, and Dr. Clark testified that he was unable to identify any medical cause for Hale's symptoms. Thus, the only medical testimony offered which would support the AJ's and Commission's findings was the testimony of Dr. Azordegan.

¶18. If the Circuit Judge were reviewing the evidence on a *de novo* basis, then he might have concluded that, the beneficent purposes of the workers' compensation act notwithstanding, the evidence offered by Dr. Clark was much more persuasive and that the ruling of the Commission was in error. However, case law from this Court indicates that it is only in rather extraordinary cases that

a circuit court should reverse the findings of the Commission. This Court noted in the factually and procedurally similar case of **Walker Mfg. Co. v. Cantrell**, 577 So.2d 1243, 1247 (Miss. 1991), that:

> [W]e have held repeatedly that the Circuit Courts must defer in their review to the findings of the Commission. (citations omitted). In a very real sense, all of this is nothing other than a workers' compensation variant on accepted limitations upon the scope of judicial review of administrative agency decisions, i.e., that the courts may interfere only where the agency action is seen [as] arbitrary or capricious.

In light of this highly deferential standard of review, this Court must conclude that the testimony of Dr. Azordegan, although disputed by reputable physicians, was a sufficient basis for the ruling of the Commission and that said ruling should be affirmed.

¶19. Although the opinions of Dr. Clark were deemed to be more reliable than those of Dr. Azordegan, the fact remains that Dr. Azordegan is a neurosurgeon who testified that, in his opinion, Hale had suffered two distinct injuries: a stretched long posterior sacroiliac ligament and a contusion of the lumbosacral joint. It is true that Dr. Azordegan based his opinion that the injury resulted from the July 17, 1989, injury partly upon the fact that Hale had misinformed him that she had suffered no back trouble since prior to the injury, with the exception of the 1986 injury. Nevertheless, in fairness to Dr. Azordegan and Hale, assuming that an injury has occurred, it is often impossible for a physician to determine whether or not the injury was incurred while lifting a given patient at a given time. A physician can ordinarily only testify as to whether a given injury *could have been* caused by a given activity. The testimony of the patient, if taken to be true, is obviously much more helpful as to the issue of when a given injury occurred, and Hale testified that her injury resulted from lifting the patient.

¶20. On these facts, this Court may or may not have reached a different conclusion than the AJ and the Commission on a *de novo* review of the facts, but, given Dr. Azordegan's testimony that Hale suffered two distinct back-related injuries, combined with Hale's testimony that she injured herself while lifting the patient, it can not be said that the Commission's ruling was "arbitrary and capricious". Accordingly, the ruling of the circuit judge is reversed and the ruling of the Commission is reinstated[(1)].

> **B. Whether the Commission erred in its legal analysis of the nature and extent of claimant's permanent disability entitlement or, stated differently, her loss of wage-earning capacity, as a result of her admitted occupational injury.**

¶21. Hale asserts that, although the Commission was correct in finding that she suffered a permanent disability, the Commission nevertheless erred in ruling that she suffered only a partial permanent disability. Miss Code Ann. §71-3-17(c)(25) (1995), which deals with permanent partial disability, provides that:

> In all other cases in this class of disability, the compensation shall be sixty-six and two-thirds (66%) of the difference between his average weekly wages, subject to the maximum limitations as to weekly benefits as set up in this chapter, and his wage-earning capacity thereafter in the same employment or otherwise, payable during the continuance of such partial disability. . . . Such payments shall in no case be made for a longer period than four hundred fifty (450)

weeks.

¶22. Pursuant to Miss. Code Ann. §71-3-3(i), when there is a finding of permanent partial disability, the claimant bears the burden of making a *prima facie* showing that he has sought and been unable to find work "in the same or other employment." When the claimant, having reached maximum medical recovery, reports back to the employer for work, and the employer refuses to reinstate or rehire him, then the claimant has established a prima facie showing of total disability. The burden then shifts to the employer to prove that the claimant has suffered only a partial disability or that the employee has suffered no loss of wage earning capacity. *Jordan v. Hercules, Inc.*, 600 So.2d 179,183 (Miss. 1992); *Pontotoc Wire Products Co. v. Ferguson*, 384 So.2d 601, 603 (Miss. 1980).

¶23. The Administrative Judge noted in his ruling, which was affirmed without comment and thus became the ruling of the Commission, that:

> This is truly a "doubtful" claim. As such, I am guided here by the beneficent purposes of the Act which mandate that doubtful claims of this nature be resolved in favor of the payment of compensation. *Delta Drilling Co. v. Cannette*, 489 So.2d 1378 (Miss. 1986). Thus, notwithstanding these recurring doubts, it is clear that claimant sustained compensable injuries on July 17, 1989, which, when considered in light of claimant's long history of productivity in the work place prior to July 7, 1989 despite years of recurring back pain; her inability to return to the activities of her former employment due to bending restrictions substantially related to her injury of July 17, 1989; and her unsuccessful attempts to find other work; results in a finding of disability as defined by Mississippi Code Annotated, §71-3-3(I). (citing *Thompson v. Wells-Lamont Corp.*, 362 So.2d 638 (Miss. 1978); *Marshall Durbin, Inc. v. Hall*, 490 So.2d 877 (Miss. 1986); *Jordan v. Hercules, Inc.*, 600 So.2d 179 (Miss. 1992)).

The ruling was as follows:

> 2. Claimant was apparently temporarily totally disabled as a result of these injuries for a period commencing on July 17, 1989, and ending August 13, 1991. 3. Claimant probably achieved maximum medical improvement from the results following her injury on or about August 13, 1991, after which she suffered a five percent (5%) permanent partial impairment to the body as a whole from a medical point of view which, when considered in light of claimant's age, education, work background and other industrially related factors, results in a loss of wage-earning capacity as a result of the effects of injury in the amount of $50.00; and 4. The average weekly wage of the claimant at the time of her injury was $160.00.

> It is therefore ordered that Ruleville Health Care, Employer, and the Travelers Insurance Company, carrier:

> 1. Pay unto claimant as compensation for temporary total disability the sum of $106.67 a week for a period commencing July 17, 1989, through August 13, 1991, giving credit for any sum heretofore paid;

> 2. Pay unto claimant as compensation for permanent partial disability the sum of $33.34 a week for a period commencing August 13, 1991, and continuing for a period of 450 weeks, giving credit for any sums heretofore paid.

¶24. The Commission did not set forth in their ruling an analysis of the factors in *Jordan* as to whether Hale had set forth a prima facie case of total disability, and, if so, whether said presumption had been rebutted. Accordingly, it appears that Hale is correct that the Commission erred as a matter of law in not employing the proper legal standard and it is proper for this Court to conduct a *de novo* review of the Commission's findings of fact in light of the applicable law.

¶25. In spite of the fact that the Commission did not expressly consider the *Jordan* factors in the ruling, it is clear that the Commission made some inquiry into the facts of the case as they relate to the issue of whether or not Hale made a showing of total disability and, if so, whether or not said presumption was rebutted. These findings of fact, made after witnessing a great deal of testimony and evidence, are entitled to deference from this Court.

*¶26.* Based on the Commission's findings of fact, it appears that Hale made out a *prima facie* case for permanent total disability, given that the Commission found that Hale had sought and been unable to find employment. At this point, the burden under the *Jordan* test, originally set forth in *Thompson,* for total disability shifts to the employer to set forth facts indicating that work was available to the claimant. In *Thompson*, this Court held that:

> In such a posture, the employer may present evidence (if any) showing that the claimant's efforts to obtain other employment was a mere sham, or less than reasonable, or without proper diligence.

*Thompson*, 362 So.2d at 641. A reading of the Commission's ruling indicates that the Commission made findings of fact to the effect that Hale's efforts at securing employment did not involve reasonable diligence. Specifically, the Commission found that:

> Finally, claimant testified that her only attempts to find employment were during the month of November, 1991, approximately one month prior to the evidentiary hearing in this matter; when confronted with the limited extent and duration of her work attempts, claimant then testified that she had made other "attempts" to find work before November, 1991, but could only specifically recall one such effort.

¶27. There are other findings of fact made by the Commission which indicate that Hale's efforts to secure employment were less than diligent. As noted in the ruling, testimony from Rosal Burden, the Administrator at the Ruleville Health Care Center, revealed that, according to company records, Hale had worked full days on the three days following the accident from which the present case arose. Burden's testimony also revealed that Hale brought a return-to-work slip from Dr. Barr stating that Hale could not lift more than twenty pounds for one month. According to Burden, she then informed Hale that the Health Center could provide her with light duty, such as cleaning closets and wheelchairs, which would not involve lifting. Hale responded that she was unable to bend over and thus unable to accept said light jobs. The return-to-work slip, however, contained no such restriction against bending.

¶28. Finally, and importantly in light of the *Jordan/Thompson* test, Hale's only efforts to regain employment at the Health Center occurred *prior* to the date at which Dr. Azordegan claims she reached maximum medical improvement. This court held in *Jordan* that:

When the claimant, *having reached maximum medical recovery* reports back to his employer to work, and the employer refuses to reinstate or rehire him, then it is prima facie that the claimant has met his burden of showing total disability.

*Jordan*, 600 So.2d at 183. (emphasis added).

¶29. Thus, Hale did not establish a prima facie presumption that she had suffered disability through her rather limited efforts to regain employment at the Health Center, under the test as set forth in *Jordan*.

¶30. Finally, the Commission noted that:

The reliability of claimant's testimony is suspect. ... Claimant omitted telling any of her physicians that she had a longstanding history of back problems and admitted these problems in her testimony only after being directly confronted with medical records. In addition, claimant's recollection of back problems prior to 1986 was more acute than her recall of back problems since 1986, as for instance, claimant's inability to recall a low back injury in April, 1989, for which she was treated by Dr. Brooks.

Hale's failure to inform any of her physicians (as well as the Commission on direct-examination) of her extensive history of back problems raises obvious and serious questions as to her good faith and honesty with regard to her claim and testimony in general.

¶31. The Commission clearly suspected that Hale had been dishonest with regard to her medical history in such a manner as to maximize her possible recovery of workers' compensation benefits. Although possible dishonesty shown by a claimant with regard to her claim is not expressly a factor as set forth in the *Jordan/Thompson* test for total disability, the same instances of dishonesty which contributed to the Commission's conclusion that the present claim was a "doubtful" one give rise to valid doubts as to the reliability of Hale's testimony regarding her attempts to secure a job.

¶32. The Commission clearly viewed Hale's testimony regarding the diligence of her attempts to find a new job with skepticism, as is evidenced by the fact that the Commission placed "attempts" in quotations in the ruling. Dishonesty in testimony need not be set forth as a *Jordan/Thompson* factor, given that a trier of fact can always consider possible dishonesty of a witness in part of her testimony in considering how much weight should be given to other testimony by said witness.

¶33. In *Walker v. Cantrell*, discussed *supra*, this Court reversed the circuit court's ruling and reinstated the ruling of the Commission that, as in the present case, the claimant had suffered a five percent permanent impairment. *Walker*, 577 So.2d at 1249. This Court in *Walker* also affirmed the Commission's findings that the claimant had not made sufficiently diligent efforts to obtain work to justify a showing of total disability. *Id.* at 1249. This Court noted in *Walker* that a claimant "must make a reasonable effort to secure other comparably gainful employment. The law does not require that he move to another part of the state, but he must case his eyes further than across the street." *Id*.

¶34. This Court has affirmed the Commission findings in favor of Hale in spite of rather glaring instances of inaccuracies and untruths provided by Hale to her physicians and to the Commission below. This Court concludes, however, that, as in *Walker*, said five percent permanent disability

awarded by the Commission constitutes all of the benefits to which Stewart should be entitled to under the facts of the case. Based on the Commission's findings of fact, the presumption established by Hale in favor of total disability pursuant to the ***Jordan/Thompson*** test was effectively rebutted by evidence showing that Hale's actions in attempting to secure employment were not diligent and she is thus not entitled to total permanent disability benefits.

¶35. The Commission's ruling that Hale had suffered only partial permanent disability was consistent with their findings of fact and with the law of this State. Accordingly, this ruling by the Circuit Court of Sunflower County is overruled, and the Commission's ruling, including the finding of five percent permanent partial disability, is affirmed and reinstated in its entirety.

¶36. **REVERSED. THE RULING OF THE WORKERS' COMPENSATION COMMISSION IS REINSTATED.**

**LEE, C.J., SULLIVAN, P.J., PITTMAN, BANKS, ROBERTS, SMITH AND MILLS, JJ., CONCUR. McRAE, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J.**

### McRAE, JUSTICE, SPECIALLY CONCURRING:

¶**37.** I agree with the majority's decision to reinstate the Commission's findings, but write separately to emphasize that the burden is on the employer to show that the employee's disability stemmed from a prior injury. Ruleville Health Care Center failed to meet that burden. The employer admitted that Hale sustained a compensable injury in 1989. As the majority notes, there was medical evidence that she had suffered two separate injuries to her back: a stretched long posterior sacroiliac ligament and a contusion of the lumbosacral joint. Even assuming *arguendo* that one of these injuries occurred prior to the 1989 claim, these are two distinct and distinguishable injuries to two different areas of the back, each manifesting itself in a different way.

¶38. In the past, where a claimant has been able to work without significant interruption in her duties despite some prior injury, as had Hale, our Workers' Compensation laws have overcompensated for one injury over another. However, not all preexisting conditions generate a duty to apportion. ***Stuart's Inc. v. Brown***, 543 So. 2d 649, 656 (Miss. 1989). To receive apportionment, an employer's burden is twofold. The employer must first show that the medical injuries to a claimant are the same. If the injuries are not the same, no apportionment can be had. If the injuries are the same, the employer must then show that a preexisting condition produced in the claimant a preexisting occupational disability. ***Id.*** In ***Stuart's Inc.***, this Court found that the claimant's ability to work four years without significant interruption after an injury was "more than a sufficient predicate for a finding of fact" that the claimant experienced no preexisting occupational disability. ***Id.***

¶39. In the instant case, the medical injuries were not the same, and the inquiry should have ended there. However, even if the court had found that the injuries were the same, Hale was entitled to a presumption of no preexisting occupational disability, because she had worked from 1986 to 1989

without any back problems whatsoever. The circuit court therefore erred in reversing the Commission's order.

**SULLIVAN, P.J., JOINS THIS OPINION.**

1. Hale phrases this issue in terms of the circuit judge having used an incorrect standard of review, but it appears that the circuit judge did use the correct standard, and he concluded that there was no substantial medical evidence supporting the Commission's finding. This Court disagrees with said conclusion of the circuit judge, but it does not appear that he utilized an incorrect standard of review.