977 So.2d 1193 (2007)
HINDS COUNTY BOARD OF SUPERVISORS and Mississippi Municipal Workers' Compensation Group, Appellants
v.
Jay JOHNSON, Appellee.
No. 2006-WC-01297-COA.
Court of Appeals of Mississippi.
September 4, 2007.
Rehearing Denied December 11, 2007.
*1195 Robert J. Arnold, Mary Frances Stallings-England, Jackson, attorneys for appellant.
Steven Hiser Funderburg, Jackson, attorney for appellee.
Before LEE, P.J., IRVING, CHANDLER, and ROBERTS, JJ.
ROBERTS, J., for the Court.

SUMMARY OF THE CASE
¶ 1. Jay Johnson was employed as a guard at the Hinds County Detention Center in Raymond, Mississippi. As will be shown, a series of events centered around Johnson's employment culminated in Johnson's loss of consciousness due to a condition known as "sudden death syndrome." Johnson brought a claim for workers' compensation benefits, and an administrative law judge found that Johnson suffered a compensable injury during his employment. Further, the administrative judge found that Johnson was entitled to permanent total disability benefits and that apportionment was inappropriate. The Full Mississippi Workers' Compensation Commission affirmed, as did the Second Judicial District of the Hinds County Circuit Court. Aggrieved, Hinds County appeals and raises four issues, listed verbatim:
A. WHETHER THE CLAIMANT'S SYNCOPE EPISODE ON SEPTEMBER 4, 2002, WAS WORK RELATED.
B. WHETHER, ASSUMING ARGUENDO THAT THE SEPTEMBER 4, 2002 EPISODE IS WORK-RELATED, SUBSTANTIAL EVIDENCE SUPPORTS A FINDING THAT THE EPISODE WAS A TEMPORARY AGGRAVATION.
C. WHETHER, ASSUMING ARGUENDO THE CLAIMANT SUFFERED A PERMANENT DISABILITY RESULTING FROM THE SEPTEMBER 4, 2002, EPISODE, APPORTIONMENT APPLIES, SUBSTANTIALLY REDUCING THE AWARD.
D. WHETHER, ASSUMING ARGUENDO THE SEPTEMBER 4, 2002 EPISODE IS WORK-RELATED, ALL MEDICAL TREATMENT RELATING TO AND SUBSEQUENT TO THE SEPTEMBER 9, 2002, IS COMPENSABLE.
Finding no error, we affirm.

FACTS
¶ 2. In August or September of 2001, Jay Johnson began working as a housing deputy at the Hinds County Detention Center in Raymond, Mississippi. Johnson's duties included supervision of approximately sixty-six prisoners. A series of events involving Johnson's supervision of prisoners led to Johnson's claim for a compensable injury.
¶ 3. The facts of this case indicate that Johnson was threatened by the prisoners. Additionally, Johnson felt as though there was a significant lack of discipline at the Hinds County Detention Center. In November *1196 of 2001, a young inmate was discovered hanging dead in his cell. Shortly afterwards, Johnson began having headaches, stomach problems, and difficulty sleeping.
¶ 4. In March of 2002, Johnson was assigned to the "hole," where, by Johnson's description, the "worst of the worst" inmates were housed. An inmate advised Johnson that the inmate was scared for his life and that his housing unit should be thoroughly searched. That search later revealed a Swiss hunting knife. In August of 2002, prisoners attacked an inmate isolated in protective custody. Those prisoners attempted to rape the inmate and they beat the isolated inmate until he was "unrecognizable." Johnson testified that no one was disciplined as a result of the incident and that he began getting threats from the prisoners under his supervision. According to Johnson, the prisoners threatened that Johnson would suffer the same treatment as the prisoner in isolated protective custody. That is, the prisoners purportedly threatened to beat and rape Johnson. Johnson continued to have headaches and an upset stomach. Also, in August of 2002, an inmate in an adjacent unit approached Johnson and told him that Johnson should "watch his back."
¶ 5. On September 2, 2002, a prisoner approached Johnson and told him that he would like to cut off his "m_____f_____ head and that he would like to kill all Christians." Johnson told the prisoner to back away, but the prisoner came back and indicated that he intended to follow through on his threat. Johnson ordered a "lock down" and the prisoner was subdued. Even so, the prisoner screamed at Johnson under the door. Johnson's supervisor heard the screaming and investigated, but the prisoner berated the lieutenant. The lieutenant told Johnson to enter the cell with him and talk to the belligerent prisoner. When Johnson complied, the prisoner punched Johnson in the face. Johnson wrote up the incident, but nothing happened to the prisoner and the prisoner was not removed from the unit. Johnson was concerned that the other prisoners would feel as though they could attack him without fear of retribution.
¶ 6. On September 4, 2002, Johnson supervised prisoners in "the gang unit." Because of a shortage of guards, the prisoners had not been out of their cells for thirty-six hours. According to Johnson, the prisoners were aware that he had been punched in the face. Johnson testified that they laughed at him and that they were "clowning."
¶ 7. The prisoners were reportedly upset because of certain delays in the process involved with releasing them for their recreation period. When Johnson finally released them and opened the cell doors, the prisoners "rushed" Johnson and crossed the yellow line intended to separate the prisoners and the guards. According to Johnson, the prisoners "descended on [him] screaming. Some of them were thanking me. Some of them . . . were heckling me for what had happened, and I seen a flash of red, and that was it." Johnson lost consciousness.
¶ 8. Johnson was rushed by ambulance to Central Mississippi Medical Center (CMMC) and placed under the care of Dr. Tellis B. Ellis, a cardiologist. Dr. Ellis described Johnson's loss of consciousness as a "sudden onset of syncope."[1] Dr. Ellis ordered an echocardiogram, EKGs, "based on telemetry monitoring,"[2] and standard *1197 blood work. Dr. Ellis found that Johnson had an enlarged heart. Having found such, Dr. Ellis was concerned that Johnson's syncope could have been related to "any possible cardiac arrhythmia." Accordingly, Dr. Ellis ordered a "tilt table test." Dr. Ellis stated that, during a tilt table test, "we place a patient at 75 degrees for about 35 minutes in a standing position to see if we can provoke syncope."
¶ 9. As a result of the tilt table test, Johnson lost consciousness, "had a cardiac arrest," and "sudden death."[3] Dr. Ellis testified that "[t]his is where his heart went into ventricular tachycardia, and he required resuscitation." At that point, Dr. Ellis transferred Johnson to St. Dominic's hospital "to obtain electrophysiological studies on the heart to find out more about what was happening and also to implant an internal defibrillator." Dr. Ellis clarified that it was "a pacemaker defibrillator . . . that monitors the heart's rhythm [and] . . . [i]f the heart goes into a fast tachycardia, potentially lethal tachycardia,[4] then it delivers a[n] . . . electrical shock to the heart." Dr. Ellis also wanted to eliminate the possibility that "coronary artery disease" could be the cause of Johnson's syncope.
¶ 10. A catheterization at ST. Dominic's revealed that Johnson had no blockages, though he did have an enlarged heart. In December of 2002, Dr. Jimmy Lott implanted a combined defibrillator/pacemaker.

PROCEDURAL HISTORY
¶ 11. On March 13, 2003, Johnson filed his petition to controvert. The County and Mississippi Municipal Workers' Compensation Group denied that Johnson's claim was compensable. On September 3, 2004, the administrative judge conducted a hearing on Johnson's petition.
¶ 12. Johnson submitted Dr. Ellis's deposition and Dr. Lott's deposition. Next, Johnson testified and rested afterwards. The County called Johnson's supervisor, Lieutenant Carl Medlock. Lieutenant Medlock testified as to his recollection of the events of September 4, 2002. The County rested after Lieutenant Medlock finished testifying.
¶ 13. On February 25, 2005, the administrative judge entered a very thorough order. The administrative judge noted that both Dr. Ellis and Dr. Lott agreed that Johnson's medical problems were due to his enlarged heart, that "the probable cause of his enlarged heart was hypertension," and "that stress, including job stress, can increase blood pressure." The administrative judge also noted that Dr. Ellis and Dr. Lott disagreed as to whether Johnson's "job stress was related through his hypertension to his enlarged heart."
¶ 14. The administrative judge then considered that Dr. Ellis, Johnson's primary treating physician, "readily connected Mr. Johnson's job stress with his hypertension and his enlarged heart" while Dr. Lott "made a general statement that the pertinent medical studies had not established an association between stress  even prolonged stress over time  and a weakened, enlarged heart muscle." The administrative judge then pointed out that, in the presence of a disagreement between the primary treating physician and another *1198 doctor, "our case law permits courts [and administrative judges] to favor the testimony of treating physicians." As such, the administrative judge gave greater weight to Dr. Ellis's opinion and found that Johnson suffered a work-related injury.
¶ 15. The administrative judge then discussed the degree of disability attributable to Johnson's injury. The administrative judge again noted that Dr. Ellis and Dr. Lott disagreed. While Dr. Ellis opined in his December 12, 2003 deposition that Johnson was totally disabled and unlikely to return to work, Dr. Lott concluded that Johnson was capable of returning to work "at a desk." Again, the administrative judge applied greater weight to Dr. Ellis's opinion and found Johnson permanently and totally disabled.
¶ 16. Finally, the administrative judge considered whether to apportion Johnson's benefits. The administrative judge cited Mississippi Code Annotated Section 71-3-7 (Rev.2000) and Stuart's, Inc. v. Brown, 543 So.2d 649, 655 (Miss.1989) and found that Johnson did not suffer a heart attack and, as such, his benefits should not be apportioned.
¶ 17. On March 10, 2005, the County appealed to the Full Commission. On October 3, 2005, the Commission conducted a hearing on the County's appeal. The next day, the Commission affirmed the administrative judge's decision without adding any additional comments. On October 21, 2005, the County appealed to the Second Judicial District of the Hinds County Circuit Court. On June 5, 2006, the circuit court affirmed the Commission's finding that Johnson suffered a compensable work-related injury.[5] However, the circuit court reversed the Commission's refusal to grant apportionment.
¶ 18. On June 16, 2006, Johnson filed a motion to reconsider. Within his motion, Johnson noted that he was diagnosed as having an enlarged heart and that he did not suffer a heart attack. Johnson also cited authority that a workers' compensation claimant must have suffered a heart attack before apportionment applies to a claim. On July 5, 2006, the circuit court entered an order and granted Johnson's motion to reconsider. Accordingly, the circuit court reinstated the Commission's decision. The County appeals.

STANDARD OF REVIEW
¶ 19. In reviewing appeals from rulings of the Workers' Compensation Commission, this Court must resolve whether a quantum of credible evidence supports the Commission's decision. Hale v. Ruleville Health Care Ctr., 687 So.2d 1221, 1224 (Miss.1997). We may not resolve conflicts in the evidence. Id. at 1224-25. Rather, we presume that the trier of fact, the Commission, resolved all conflicts in the evidence. Id. This is a highly deferential standard of review. Id. at 1225. Essentially, we will overturn the Commission if its decision was arbitrary and capricious. Id. We will also overturn the Commission if its decision was based on an error of law or an unsupported finding of fact. Meridian Professional Baseball Club v. Jensen, 828 So.2d 740(¶ 8) (Miss.2002).

ANALYSIS
A. WHETHER THE CLAIMANT'S SYNCOPE EPISODE ON SEPTEMBER 4, 2002, WAS WORK RELATED.
¶ 20. Before we delve into this particular issue, we again note that the administrative *1199 judge rendered a very thorough findings of facts and conclusions of law in his opinion and order. The Commission affirmed and did not comment beyond its decision to affirm. It is very well possible that the Commission did not comment because of the detail involved in the administrative judge's opinion. In any event, under these circumstances, it is appropriate to address our review toward the decision of the administrative judge, rather than the Commission. With that in mind, we turn to the County's first assertion of error.
¶ 21. The County attacks the administrative judge's finding that Johnson's September 2002 syncope episode was work related. According to the County, the administrative judge's finding was not based on substantial evidence because (a) the administrative judge incorrectly found that Dr. Lott was not Johnson's primary treating physician, and (b) Johnson was not involved in any particularly stressful situation at the time of his syncope episode.
¶ 22. As for the County's first contention, we find this argument unpersuasive. The County's argument is not entirely meritless, as Dr. Lott did not merely examine Johnson in preparation of Johnson's workers' compensation claim. Rather, Dr. Lott implanted Johnson's combined pacemaker and defibrillator well in advance of Johnson's petition to controvert. In addition, Johnson returned to Dr. Lott for periodic examinations approximately every three to four months afterwards. However, the administrative judge's findings cannot be said to be arbitrary and capricious. Dr. Ellis treated Johnson upon his admission at CMMC. Dr. Ellis determined the cause of Johnson's syncope episode. Dr. Ellis administered various tests, including the tilt table test. Johnson visited Dr. Ellis approximately once a month after Dr. Lott implanted Johnson's pacemaker. Considering the facts and circumstances of this case, it was within the administrative judge's discretion to determine that Dr. Ellis was Johnson's primary treating physician.
¶ 23. Assuming, for the sake of discussion only, that the administrative judge's finding was not supported by substantial evidence, it would still be within the administrative judge's discretion to apply greater weight to Dr. Ellis's medical conclusion above Dr. Lott's. Even if neither Dr. Ellis nor Dr. Lott could be said to be Johnson's primary treating physician, it is within the administrative judge's discretion to apply greater weight and worth to the testimony of one fully qualified physician over another. Additionally, "in doubtful cases the doubt should be resolved in favor of compensation so that the beneficent purposes of the Workers' Compensation Act may be carried out." Mitchell Buick, Pontiac and Equip. Co. v. Cash, 592 So.2d 978, 981 (Miss.1991). Said differently, based on the "broad policy considerations undergirding the Workers' Compensation Act and the liberal construction to be given the compensation statutes," the injured worker should prevail when the evidence is "even." Nichols-Banks v. Lenscrafters, 814 So.2d 808(¶ 21) (Miss.Ct.App.2002).
¶ 24. Next, the County claims that Johnson was not involved in "any particularly stressful activity or situation at the time of his episode; he was simply talking to a group of prisoners." That is a gross mischaracterization of Johnson's version of events. As detailed above, Johnson related a series of events that he perceived as stressful. We cannot find that Johnson's perception was unreasonable. Further, we cannot find that the administrative judge's decision was unsupported by substantial evidence.
*1200 B. WHETHER, ASSUMING ARGUENDO THAT THE SEPTEMBER 4, 2002 EPISODE IS WORK-RELATED, SUBSTANTIAL EVIDENCE SUPPORTS A FINDING THAT THE EPISODE WAS A TEMPORARY AGGRAVATION.
¶ 25. The County claims that the administrative judge erred because neither Dr. Ellis nor Dr. Lott stated that the September 4, 2002 episode was anything more than a temporary aggravation of Johnson's pre-existing hypertension and heart disease. Be that as it may, it is also true that neither Dr. Ellis nor Dr. Lott testified that Johnson's September 4, 2002 episode was a temporary aggravation of Johnson's pre-existing hypertension and heart disease. While Dr. Lott opined that Johnson would have returned to baseline within a couple of hours, we cannot agree that Dr. Lott's testimony amounts to an opinion that the episode was temporary in nature. It could indicate that the syncope episode was temporary, but that does not amount to evidence that Johnson's entire condition was temporary  at least not evidence that would suffice to reverse the administrative judge's decision.
C. WHETHER, ASSUMING ARGUENDO THE CLAIMANT SUFFERED A PERMANENT DISABILITY RESULTING FROM THE SEPTEMBER 4, 2002, EPISODE, APPORTIONMENT APPLIES, SUBSTANTIALLY REDUCING THE AWARD.
¶ 26. The County claims that apportionment was appropriate. Pursuant to Mississippi Code Annotated Section 71-3-7 (Rev.2000):
Where a preexisting physical handicap, disease, or lesion is shown by medical findings to be a material contributing factor in the results following injury, the compensation which, but for this paragraph, would be payable shall be reduced by that proportion which such preexisting physical handicap, disease, or lesion contributed to the production of the results following the injury.
The Mississippi Supreme Court addressed apportionment of pre-existing conditions in Stuart's, Inc. v. Brown, 543 So.2d 649 (Miss.1989). According to Stuart's Inc., "[a] preexisting physical handicap, disease or lesion which did not impair wage earning capacity ex ante by definition cannot be that which impairs wage earning capacity ex post." Id. at 655 (emphasis in original) (internal quotations omitted). Stuart's Inc., goes on to state:
On the other hand, in cases where (1) there is evidence of a medically cognizable, identifiable, symptomatic condition which antedated the injury; and (2) the employee experienced some absence of normal (for him or her) wage earning capacity, then apportionment must be ordered.
Id. The supreme court clarified its ruling by citing 2 Larson, The Law of Workers Compensation (1987):
Apart from special statute, apportionable "disability" does not include a prior non-disabling defect or disease that contributes to the end result. Nothing is better established in compensation law than the rule that, when industrial injury precipitates disability from a latent prior condition, such as heart disease, cancer, back weakness and the like, the entire disability is compensable, and except in states having special statutes on the aggravation of disease, no attempt is made to weigh the relative contribution of the accident and the preexisting condition to the final disability or death. Apportionment does not apply in such cases, nor in any case in which the *1201 prior condition was not a disability in the compensation sense.

Larson, § 59.21 (1987) (emphasis added) (footnotes omitted). Finally, Stuart's Inc. held that, "not all preexisting conditions generate a duty to apportion, only those which have produced in the claimant a preexisting occupational disability." Stuarts, 543 So.2d at 656.
¶ 27. Dr. Ellis testified that Johnson's heart problems were due to his enlarged heart, and Johnson's enlarged heart could have been attributed to several factors, including genetics, obesity, and stress  including job stress. Said differently, Dr. Ellis also, testified that "[t]he hypertension caused the heart disease. The heart disease caused the tachycardia which caused the cardiac arrest." There was also medical evidence that Johnson suffered from hypertension as early as 1996. There was no proof that Johnson's pre-existing high blood pressure or his enlarged heart caused him any loss of wage earning capacity prior, to September 4, 2002. Until that time, he was able to perform the functions of his employment without limitation. Under these circumstances, apportionment of Johnson's benefits is inappropriate.
D. WHETHER, ASSUMING ARGUENDO THE SEPTEMBER 4, 2002 EPISODE IS WORK-RELATED, ALL MEDICAL TREATMENT RELATING TO AND SUBSEQUENT TO THE SEPTEMBER 9, 2002, IS NOT RELATED TO THE SEPTEMBER 4, 2002, EPISODE AND IS THEREFORE NOT COMPENSABLE.
¶ 28. The County failed to cite any authority for its position in this issue. Arguments advanced on appeal must "contain the contentions of the appellant with respect to the issues presented, and the reasons for those contentions, with citations to the authorities, statutes, and parts of the record relied on." M.R.A.P. 28(a)(6). Failure to comply with M.R.A.P. 28(a)(6) renders an argument procedurally barred. See Read v. Southern Pine Elec. Power Assoc., 515 So.2d 916, 921 (Miss.1987).
¶ 29. THE JUDGMENT OF THE SECOND JUDICIAL DISTRICT OF THE HINDS COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., LEE AND MYERS, P.JJ, IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND CARLTON, JJ., CONCUR.
NOTES
[1] According to Dr. Ellis's deposition testimony, syncope is an "abrupt blackout spell." A "syncope" is a loss of consciousness due to lack of oxygen to the brain.
[2] Dr. Ellis testified that "[t]elemetry . . . is a continuous cardiac rhythm monitoring to see if there is any arrhythmia that would explain the syncope."
[3] Dr. Jimmy Lott testified during his deposition that "[s]udden death syndrome is someone that dies suddenly. It can have lots [of] causes, but the most common cause in our adult society is a weakened heart pump that then has rapid heart rhythm that leads to sudden death."
[4] According to Dr. Lott, "[t]achycardia is a fast heartbeat."
[5] The circuit court filed its initial opinion and order on June 20, 2006. As such, Johnson's motion to reconsider appears in the record before the circuit court's initial opinion and order.