IRVING, J.,
for the Court.
¶ 1. Otis Varnado filed a petition to controvert on October 4, 2000, alleging that he had been injured during the course and scope of his employment with Pike County and that he suffered permanent disability as a result of his injury. A hearing was held on August 2001, before an administrative law judge of the Worker’s Compensation Commission. At the conclusion of the hearing, the judge found that Varnado had a permanent impairment attributable to a work-related back injury and awarded permanent total disability benefits. The Full Commission affirmed the decision of the administrative law judge. Upon appeal by Pike County, the Pike County Circuit Court affirmed the decision of the Full Commission.
¶ 2. Feeling aggrieved, Pike County now appeals from the order of the circuit court and asserts the following issue: whether the Worker’s Compensation Commission committed error by awarding permanent total disability benefits and other related medical expenses to Varnado.
¶ 3. Finding no error, we affirm the judgment of the circuit court.
*479 FACTS
¶ 4. Otis Varnado is a sixty-one year old resident of Summit, Mississippi. He has a high school education and one semester of college. Prior to his employment with Pike County, Varnado worked as a school bus driver, yard maintenance worker, a truck driver’s helper, and a shipping clerk.
¶ 5. Varnado began his employment with Pike County on June 1, 1972, as an operator. Varnado testified that during his twenty-seven year employment with Pike County, he always worked as a heavy equipment operator and was never offered any other job.
¶ 6. On August 9, 1999, while Varnado was using a pipe to fasten a binder securing a tractor to a trailer, the pipe slipped and as Varnado threw his leg around in an attempt to throw the pipe out of the way, he heard his leg pop. Varnado injured his ankle and back in the incident.
¶ 7. On the date of the injury, a coworker transported Varnado to Southwest Mississippi Regional Medical Center where Varnado underwent x-rays and had a wrapped cast put on. Dr. Thomas B. Jeffeoat diagnosed Varnado with a fracture and with disruption of the medial ligamen-tous structure and told Varnado that he needed surgery. However, Varnado refused surgery and asked to be released. The next day Varnado met with Dr. Penny J. Lawin at the Mississippi Sports Medicine Clinic. Dr. Lawin’s impression was that Varnado suffered from a fracture of his left ankle and that Varnado needed surgery immediately. Outpatient surgery was performed that day.
¶ 8. Dr. Lawin noted on December 8, 1999, that Varnado complained of shooting pain in his legs and back. Dr. Lawin opined that Varnado suffered from pero-neal and posterior tib tendinits as a result of his physical therapy and that his back pain was caused by his limping. Furthermore, Dr. Lawin noted on February 1, 2000, that Varnado complained of having difficulty standing and numbness in his feet. As a result, Dr. Lawin recommended that Varnado undergo an EMG and nerve conduction study which was conducted by Dr. Michael C. Graeber. This study suggested a possible SI radiculopathy. Dr. Lawin then referred Varnado to Dr. Bruce S. Senter, an orthopedic surgeon in Jackson, Mississippi.
¶ 9. On March 21, 2000, Varnado was examined by Dr. Senter. Dr. Senter opined that Varnado suffered from marked stenosis at the second to last and third disc. Dr. Senter recommended surgery, but Varnado was not interested. Instead, Varnado opted for non-surgical treatment, and on April 11, 2000, Dr. Senter placed Varnado at maximum medical improvement with a forty pound lifting and an hour long standing restriction. Also, Dr. Senter gave Varnado a seven percent impairment rating to his back. On April 24, 2000, Dr. Lawin concluded that Varnado had reached maximum medical improvement and determined that his “disability is no more than three percent.” Varnado was instructed to return on a pro re nata (as the situation demands) basis.
¶ 10. Prior to the incident on August 9, 1999, Varnado was under the care of Dr. Terry E. Westbrook in McComb, Mississippi. Varnado continued to see Dr. West-brook after the injury. In a May 15, 2000 letter which was sent to Pike County, Dr. Westbrook stated, “I have advised him [Varnado] that he is totally physically disabled because of recurrent back pain, spinal stenosis. I do not feel that he is physically able to hold any type of job.”
¶ 11. Varnado testified that on April 11, 2000, he picked up a disability retirement package from the Jackson office of the Public Employees Retirement System *480 (PERS). He took the retirement papers to Dorothy Parker, the payroll clerk for the Pike County Board of Supervisors. Ms. Parker completed the PERS application based on the information that was provided by the office of the county road foreman, Bill Montgomery, without any assistance from Varnado.
¶ 12. According to the “Employer’s Statement on Job Requirements Form,” dated April 21, 2000, the Pike County Board of Supervisors represented to PERS that Varnado could no longer perform his job because Varando could “no longer climb on and off equipment and lift culverts to be loaded and walk and patch holes.” Varnado’s PERS application indicates that he was compelled to stop working due to his condition and that he first consulted a physician for the same on August 9, 1999. Ms. Parker testified that Varnado’s application was true and correct.
¶ 13. Montgomery stated in his April 26, 2000 correspondence to PERS that Varnado’s job as operator consisted of loading dump trucks with front end loaders, operating a motor grader, patching pot holes which involves the use of a shovel to pick up hot or cold mix asphalt weighing 15 pounds per shovel, removing debris and trees, which weigh 50 to 100 pounds, off county rights-of-way, laying culvert pipe, and repairing bridges.
¶ 14. Varnado and the Pike County Board of Supervisors met on May 22, 2000, to discuss Varnado’s employment status. At this meeting, Varnado advised the Board that Dr. Westbrook would not allow him to return to work. Also, on May 22, the Board received the correspondence from Dr. Westbrook discussed in the earlier portion of this opinion.
¶ 15. Varnado testified that he was told that there were no light duty jobs. However, he was offered a dump truck driver position. Varnado testified that, because of numbness in his legs and pain in his back, he could not perform this job.
¶ 16. Chuck Lambert, Pike County administrator, testified that at the time of Varnado’s injury, Varando was being paid $771.21 twice a month. However, Varna-do’s average weekly wage, based on his wage information from January 1, 1994, through December 31, 2000, was calculated to be $363.34.
¶ 17. After considering (1) the nature and severity of Varnado’s impairment, (2) the impairment rating and restrictions assessed by Dr. Westbrook, (3) Varnado’s inability to return to any of his former occupations due to the opinion of Dr. Westbrook, and (4) other industrial related factors such as Varnado’s age of sixty-one years and his work history in excess of twenty-seven years as an equipment operator, the administrative law judge found that Varnado had a 100% loss of wage earning capacity attributable to the work-connected injury of August 9, 1999. The Full Commission adopted the findings of fact and decision of the administrative law judge, and the Pike County Circuit Court affirmed the Full Commission.
ANALYSIS AND DISCUSSION OF THE ISSUES
¶ 18. The standard of review in workers’ compensation cases is limited. The substantial evidence test is used. The Workers’ Compensation Commission is the trier and finder of facts in a compensation claim. This Court will overturn the Workers’ Compensation Commission decision only for an error of law or an unsupported finding of fact. Reversal is proper only when a Commission’s order is not based on substantial evidence, is arbitrary or capricious, or is *481 based on an erroneous application of the law.
Weatherspoon v. Croft Metals, Inc., 853 So.2d 776, 778(¶ 6) (Miss.2003) (citations omitted).
¶ 19. Pike County argues that the Commission’s award of permanent total disability benefits to Varnado and expenses associated with services and supplies for Varnado’s recovery is in error and is unsupported by substantial evidence. In support of this argument, Pike County directs us to the following quote from McCray v. Key Constructors, Inc. 803 So.2d 1199, 1203(¶ 17) (Miss.Ct.App.2001):
In order to be deemed permanently totally disabled, a claimant must show something more than an inability to return to the job existing at the time of injury.... [T]he injured claimant, in order to demonstrate total disability must show that he has made a diligent effort, but without success, to obtain gainful employment.
¶ 20. “Disability” is defined as “incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or other employment, which capacity and the extent thereof must be supported by medical findings.” Miss.Code. Ann. § 71 — 3—3(i) (Rev. 2000).
¶21. Pike County contends that both Dr. Lawin and Dr. Senter, Varnado’s treating specialists, placed Varnado at maximum medical improvement and released him to return to work with restrictions and that Varnado declined the dump truck job offered to him by Pike County. Pike County maintains that, since Varnado testified that he never looked for work after being released by Dr. Lawin and Dr. Senter, he failed to establish a prima facie case for permanent total disability as required by workers compensation law of Mississippi.
¶ 22. Varnado counters that the Commission had substantial evidence to support the finding that he established a pri-ma facie case of permanent total disability. Varnado maintains that the medical evidence supports the conclusion that he suffered a total loss of wage earning capacity because Dr. Westbrook stated that Varna-do was totally physically disabled, and with the restrictions imposed by Dr. Senter, he could not perform his old job of heavy equipment operator for Pike County or any job whatsoever.
¶ 23. Varando maintains that since there is substantial medical evidence that he is permanently, totally disabled and unfit for employment in any occupation, permanent total disability benefits may be awarded without reference to whether or not he sought other employment. In support of this argument, Varnado cites South Central Bell Telephone Co. v. Aden, 474 So.2d 584 (Miss.1985).
¶ 24. In South Central Bell Telephone Co., the claimant injured her back while performing a routine task as a telephone operator. The claimant’s replacement treating physician, a general surgeon, opined that the claimant was totally and permanently disabled from work.[1] The employer introduced medical evidence which contradicted the claimant’s evidence as to the claimant’s disability and functional abilities. Nevertheless, on appeal, our supreme court affirmed an award of permanent total disability benefits based on the severity of the claimant’s physical limitations.
¶ 25. In reaching its decision, the court did not address whether claimant was obli *482 gated to seek other employment to prove a permanent total loss of wage-earning capacity. Varando maintains that his evidence is similar to the evidence that was presented in South Central Bell Telephone Co.
¶ 26. We agree with Varnado that there are similarities between the medical evidence submitted in South Central Bell Telephone Co. and the medical evidence offered here. However, we note that the precise issue raised here — that a claimant must seek and be refused other comparable work before he can be adjudged to have suffered a 100 percent loss of wage earning capacity — was not raised in South Central Bell Telephone Co.
¶ 27. In addition to citing McCray, Pike County also cites Hale v. Ruleville Health Care Center, 687 So.2d 1221, 1226 (Miss.1997) and Pontotoc Wire Products Co. v. Ferguson, 384 So.2d 601, 603 (Miss.1980) for the proposition that Varnado failed to present a prima facie case of total occupational or industrial disability because he neither attempted to perform the job offered to him by Pike County nor attempted to secure other employment but was turned down.
¶ 28. We find none of the cases cited by Pike County to be applicable here. In all of those cases, the medical proof was that the claimant had suffered only a permanent partial disability. When a claimant has suffered only a permanent partial disability, “the claimant bears the burden of making a prima facie showing that he has sought and been unable to find work ‘in the same or other employment.’ ” Hale, 687 So.2d at 1226. If the claimant reports back to work at his current employer but the employer refuses to hire him, the claimant has established a prima facie case of total disability. Id. “The burden then shifts to the employer to prove that the claimant has suffered only a partial disability or that the claimant has suffered no loss of wage earning capacity.” Id.
¶ 29. Here, as we have already observed, there was evidence that Varnado not only suffered a one hundred percent permanent medical disability, but also a one hundred percent occupational disability or loss of wage earning capacity. That was the import of Dr. Westbrook’s assessment that Varnado could not “hold any type of job.”
¶ 30. Although Dr. Westbrook was unequivocal in his assessment of Varnado, we are somewhat bothered inasmuch as that assessment appears to be cursory. We note that Dr. Westbrook did not treat Varnado for the occupational injury suffered by Varnado even though he treated Varnado prior to the accident and after Varnado reached maximum medical improvement as determined by Drs. Lawin and Senter. It was Dr. Westbrook’s view that Varnado is one hundred percent disabled because of “recurrent back pain and spinal stenosis.” What is not totally clear from the record is whether there is a causal connection between Varnado’s sten-osis and the occupational injury which he suffered. While Dr. Senter states in his office notes that Varnado had “marked stenosis at the second to last and third to last disc,” he does not state that the steno-sis was caused by the occupational injury. However, he does state that the seven per cent impairment rating was being given “due to his back from his injury.”
¶ 31. We are cognizant of our supreme court’s admonition in South Central Bell Telephone Co.:
When we review the facts on appeal, it is not with an eye toward determining how we would resolve the factual issues were we the triers of the fact; rather, our function is to determine whether there is *483 substantial credible evidence which would support the factual determination made by the Commission. If there be such substantial credible evidence, we are without authority to disturb that which the Commission has found, even though that evidence would not be sufficient to convince us were we the factfin-ders.
South Central Bell Telephone Co., 474 So.2d at 589-90 (citing Staple Cotton Services Assn. v. Russell, 399 So.2d 224, 228-29 (Miss.1981); King & Heath Construction Co. v. Hester, 360 So.2d 692, 694 (Miss.1978)).
¶32. Also, the Mississippi Supreme Court has stated that disability should be determined after considering the evidence as a whole. DeLaughter v. South Central Tractor Parts, 642 So.2d 375, 379 (Miss.1994) (citing Mc Cowan v. Orleans Furniture, Inc., 586 So.2d 163, 167 (Miss.1991)). Other factors such as “the amount of training and education which the claimant has had, his inability to work, his failure to be hired elsewhere, the continuance of pain, and any other related circumstances” should also be considered. Id.
¶ 33. Therefore, mindful of our deferential standard of review and after considering the evidence as a whole, we find that there was substantial evidence to support the Commission’s finding that Yarnado is permanently and totally disabled. While the medical evidence is in dispute as to whether Varnado has suffered a total or partial permanent injury, it was a dispute to be resolved by the Commission. The Commission resolved it in Varnado’s favor. Likewise, whether Varnado also suffered a total loss of wage earning capacity depends in part upon whose version of the medical evidence is accepted. Again, the Commission chose to credit Dr. West-brook’s assessment that Varnado cannot hold any type job. This assessment was corroborated by Varnado’s testimony as well as Pike County’s statement to PERS that Varnado is totally disabled. Accordingly, we affirm the judgment of the circuit court affirming the decision of the Commission.
¶ 34. THE JUDGMENT OF THE CIRCUIT COURT OF PIKE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., BRIDGES AND LEE, P.JJ., MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.

. Claimant’s primary treating physician died and was replaced by the general surgeon who testified in claimant's behalf before the administrative law judge.