ISHEE, J.,
for the Court:
¶ 1. This appeal involves a review of an opinion of the Mississippi Workers’ Compensation Commission (the Commission). The issue in this case is whether the Commission’s opinion was supported by substantial evidence. Melody Adams was employed as a licensed practical nurse (LPN) at the River Region Health Systems Hospital (River Region). During the course of her employment, she fell and injured her back. In April 2009, Adams filed a petition to controvert with the Commission. In December 2011, the administrative judge (AJ) issued an order finding Adams *865 permanently totally disabled because of her work-related injury. River Region and Zurich American Insurance Company (Zurich) then appealed the AJ’s decision to the full Commission. The full Commission affirmed the decision. From that ruling, River Region and Zurich now appeal, arguing the decision was not supported by substantial evidence.
FACTS AND PROCEDURAL HISTORY
¶ 2. Adams was employed as an LPN at River Region. She was earning approximately $387.65 per week in her position. On April 2, 2007, while tending to a patient’s intravenous therapy, Adams stepped in some water on the floor and fell. Immediately thereafter, Adams sought treatment in River Region’s emergency room. Initially, she was removed from work for two or three days but then returned to her regular duties. However, in January 2008, she was assigned sedentary-duty restrictions.
¶ 3. On April 23, 2007, Adams sought treatment from her family physician, Dr. Hildon Sessums. He had treated Adams previously in November 2003 for back pain radiating into her left leg. At her April 2007 visit, Adams complained of back pain and radicular pain in her left leg and hip. Dr. Sessums prescribed medication and administered injections. Dr. Sessums then recommended that Adams visit Dr. Robert Strong for epidural steroid injections. Adams continued to see Dr. Ses-sums for medication management.
¶ 4. Dr. Sessums testified regarding Adams’s physical restrictions. Adams was only allowed to lift a maximum of ten pounds- and could not sit or stand for prolonged periods of time. She also only had approximately twenty five percent of the normal range of motion in the lumbar spine and was unable to flex more than thirty degrees.
¶ 5. On June 21, 2007, per Dr. Sessums’s referral, Adams visited Dr. Strong. Dr. Strong compared Magnetic Resonance Imaging (MRI) tests from 2004 to those taken in April 2007. He found that a change had occurred in Adams’s L4-5 disc. The April 2007 MRI revealed a bulging disc, with a mild facet change, which was worse than in the previous MRI. Dr. Strong recommended lumbar epidural steroid injections. Adams underwent two injections but experienced no relief.
¶ 6. On October 5, 2007, Adams saw Dr. Jack Moriarity, a neurosurgeon. He reviewed Adams’s MRI films and found mild multilevel spondylosis, mild L3-4 disc degeneration, and significant disc degeneration at L4-5. He continued Adams on light-work restrictions. Dr. Moriarity concluded that Adams did not need surgery and referred her to Dr. Rahul Vohra for rehabilitation.
¶ 7. On November 2, 2007, Adams saw Dr. Vohra. He modified her physical therapy, encouraged her to go forward with lumbar facet injections, and continued her on sedentary duty. On December 17, 2007, Dr. Vohra found that Adams showed no improvement from further physical therapy or facet injections. He opined that further therapy would be of no benefit. Dr. Vohra assessed a seven percent impairment to the body as a whole and permanently limited her to a very light level of work, which included lifting no more than twenty pounds and limited bending, stooping, and twisting.
¶ 8. As of January 2008, Dr. Sessums placed Adams on sedentary duty, and by April 2009, he determined she was unable to work. His decision was based on her inability to sit at work for any period of time, her need for bed rest, and her inability to perform the duties of her job. Dr. *866 Sessums also considered pain in evaluating Adams’s disability. He stated that he would assess an additional ten percent impairment for Adam’s pain in addition to the seven percent disability assessed by Dr. Vohra.
¶ 9. In January 2008, Adams began working as a ward clerk due to her work restrictions. As a ward clerk, she compiled patient charts, placed orders into the computer system, and organized the nursing floor. She continued in this position until she was removed from work by her physician in April 2009. Thereafter, River Region offered Adams a full-time position as a ward clerk. Adams declined the position because it would not pay her the amount she earned as an LPN.
¶ 10. Adams testified that she was contacted by nurses at two different facilities, but they would not hire her because of her medical problems. She testified she had not sought employment outside of the nursing field. Adams also stated she had signed up at the Workforce Investment Network Center (WIN) a couple of weeks before the hearing; however, she acknowledged that she had only done so because her lawyer told her she needed to seek employment.
¶ 11. On April 22, 2009, Adams filed a petition to controvert with the Commission. A hearing was held before the AJ on December 6, 2010. On December 5, 2011, the AJ entered an order finding Adams was permanently totally disabled because of the injury. In assessing the evidence, the AJ considered Dr. Sessums’s testimony to be the most persuasive testimony due to the fact that he had been treating her since 2005, knew her pre-injury condition, and had observed her work environment. The AJ awarded Adams $258.17 per week for 450 weeks beginning April 2, 2007, a ten percent penalty for any untimely paid installments, and all costs associated with her medical services and supplies.
¶ 12. On December 14, 2011, River Region and Zurich appealed the AJ’s decision to the full Commission. The full Commission affirmed the AJ’s decision on May 24, 2012. River Region and Zurich now appeal to this Court. On appeal, they argue the Commission’s decision was not supported by substantial evidence.
DISCUSSION
¶ 13. “Our scope of review in workers’ compensation cases is limited to a determination of whether the decision of the Commission is supported by substantial evidence.” Moore’s Feed Store, Inc. v. Hurd, 100 So.3d 1011, 1017 (¶ 20) (Miss.Ct.App.2012) (citation omitted). We will only reverse the decision of the Commission if it is clearly erroneous and contrary to the overwhelming weight of the evidence. Id. at 1017-18 (¶ 22) (citation omitted). When the Commission adopts the AJ’s findings and conclusions, we review the AJ’s findings and conclusions as those of the Commission. Id. (citation omitted).
I. Reasonable Effort to Secure Employment
¶ 14. First, River Region and Zurich argue that Adams failed to prove that she made a reasonable effort to secure employment. The AJ stated as follows
It is noted that [Adams] was not required to make a job search in order to establish a prima facie case of disability, as she was medically excused from this requirement by the testimony of her treating physician, Dr. Hildon Sessums, that she could not return to any form of gainful employment and was thereby permanently totally disabled.
¶ 15. “When a claimant has suffered only a permanent partial disability, ‘the claimant bears the burden of making a *867 prima facie showing that he has sought and been unable to find work in the same or other employment.’ ” Pike Cnty. Bd. of Supervisors v. Varnado, 912 So.2d 477, 482 (¶ 28) (Miss.Ct.App.2005) (quoting Hale v. Ruleville Health Care Ctr., 687 So.2d 1221, 1226 (Miss.1997)). “If the claimant reports back to work at his current employer but the employer refuses to hire him, the claimant has established a prima facie case of total disability.” Id. “The burden then shifts to the employer to prove that the claimant has suffered only a partial disability or that the claimant has suffered no loss of wage[-]earning capacity.” Id.
¶ 16. In Ameristar Casino-Vicksburg v. Rawls, 2 So.3d 675 (Miss.Ct.App.2008), the claimant, James Rawls, was awarded permanent total disability benefits by the Commission. Rawls worked as a slot-machine technician and injured his back while performing the duties of his employment. Id. at 676 (¶ 2). Rawls underwent surgery and physical therapy for his injuries. Id. at 677 (¶ 4). After his treatment was complete, his primary physician, Dr. Brian Bulloch, assigned a twenty-three percent permanent impairment rating. Id. He was limited to sedentary to light-duty work restrictions and could not lift more than ten to twenty pounds. Id. Dr. Vohra, a specialist, assigned a permanent disability rating of ten percent, with a light-duty level of work restriction. Id. at 678-79 (¶1¾.
¶ 17. After Rawls was released by his doctor, Ameristar Casino offered Rawls employment as a transportation dispatcher. Id. at 677 (¶ 5). He would have made the same pay as a slot machine technician and would have been allowed to sit and stand as needed. Id. Rawls turned down the position because he would have been unable to perform the duties of the position. Id. He was also unable to make the drive from his hometown in Louisiana to Vicksburg, Mississippi, each day. Id. at 677-78 (¶ 5). Rawls did not make any other job search other than asking a few friends for work, which they declined to provide. Id. at 679 (¶ 13).
¶ 18. Dr. Bulloch found that Rawls was not a candidate for employment because he was unable to sit or stand in any position for any significant period of time and was in significant pain. Id. at 678 (¶ 6). Dr. Bulloch stated: “I think that positions would be few and far between. He was not employable in most situations.” Id.
¶ 19. The AJ found that Rawls was permanently and totally disabled. Id. at 679 (¶ 14). Both the Commission and the circuit court affirmed the AJ’s ruling. Id. at (¶ 15). Ameristar then appealed. Id. On appeal, we found that Rawls “met his burden of proof by making out a prima facie case of work-related disability.” Id. at 682 (¶ 25). We stated: “We can find that Rawls’s job search, which was really no more than a rejection of the one job offered by Ameristar, was reasonable” under the circumstances. Id. at (¶ 26). We cited Rawls’s limited education, his age, and his work history in manual-labor jobs in considering his ability to work in a different position. Id. This Court found his injury and extreme pain severely limited his ability to work. Id. at 682-83 (¶ 26). We then affirmed the decision of the Commission. Id. at 683 (¶ 26).
¶ 20. The facts in Ameristar are similar to the facts in the instant case. Here, it is uncontested that Adams was unable to perform the duties of the employment she held at the time of her injury. She was, therefore, released from her position. However, like Rawls, she was offered a different position by her employer. Although she worked as a ward clerk for a period of time, and River Region offered her a job in that capacity, Adams and Dr. Sessums testified that she was unable to *868 work as a ward clerk. The evidence established that Adams was in a great deal of pain, could not stand for longer than fifteen minutes, and could not sit for more than thirty minutes at a time. Furthermore, she was unable to drive during the six-month period prior to her hearing. In addition, like Rawls, Adams had worked as an LPN for a long period of time, more than twenty years. The only other position she had held was as a receptionist more than two decades prior to her injury. Thus, she was limited in the types of jobs that would be available to her even if she was able to work.
¶ 21. Although Adams only conducted a very limited job search, we find it was reasonable under the circumstances. The fact that she was unable to return to her previous position as an LPN established a prima facie case of disability. The burden then shifted to the employer to establish only a partial disability or no loss of wage-earning capacity. The employer failed to do so. The employer introduced medical evidence contrary to Dr. Sessums’s opinion; however, as will be discussed below, the Commission found Dr. Sessums’s opinion more credible. The medical evidence and Adams’s own testimony establish that she is unable to hold any position; therefore, her job search was reasonable.
II. Medical Testimony
¶ 22. Next, River Region and Zurich argue the Commission erred by favoring the general practitioner’s opinion over the treating specialist’s opinions. As noted above, the AJ found Dr. Sessums’s opinion more persuasive due to his past treatment of Adams before the injury and his familiarity with her work environment.
¶23. “The Commission ‘serves as the ultimate fact[-]finder in addressing conflicts in medical testimony and opinion.’” Smith v. Tronox LLC, 76 So.3d 774, 780 (¶ 23) (Miss.Ct.App.2011) (quoting Raytheon Aerospace Support Servs. v. Miller, 861 So.2d 330, 336 (¶ 13) (Miss.2003)). “Where medical expert testimony is concerned, the supreme court has held that whenever the expert evidence is conflicting, the Court will affirm the Commission’s decision whether the award is for or against the claimant.” Id. “Even if this Court would not have reached the same decision as the Commission, we must affirm when the Commission’s findings are supported by substantial evidence and are neither arbitrary nor capricious.” Id.
¶ 24. While there was some conflicting evidence as to whether Adams was permanently totally disabled, it was a dispute to be resolved by the Commission. The Commission found in Adams’s favor. Dr. Sessums opined that Adams was completely unable to work. However, Dr. Vohra found that she could perform a very light level of work. As noted above, Dr. Ses-sums’s had a history of treating Adams and was familiar with her work environment. We find that the Commission did not err by finding Dr. Sessums’s evaluation more persuasive. Accordingly, this issue is without merit.
III. Substantial Evidence
¶ 25. Finally, River Region and Zurich argue the Commission’s order was not supported by substantial evidence. They essentially make the same arguments addressed in the prior two sections. They argue the medical testimony and lack of a job search render the Commission’s decision improper.
¶ 26. As noted above, the Commission found Dr. Sessums’s evaluation and testimony persuasive. The medical evidence in conjunction with Adams’s testimony supports the decision of the Commission. Furthermore, we have found Adams’s job search reasonable. We find that there was *869 substantial evidence to support the Commission’s decision. This issue is -without merit.
¶ 27. THE JUDGMENT OF THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ROBERTS, FAIR AND JAMES, JJ., CONCUR. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. MAXWELL, J., NOT PARTICIPATING.