952 So.2d 267 (2006)
WHIRLPOOL CORPORATION, Appellant
v.
Mary J. WILSON, Appellee.
No. 2005-WC-01366-COA.
Court of Appeals of Mississippi.
November 14, 2006.
*268 Kenneth Harold Coghlan, Oxford, attorney for appellant.
Keith Sanders Carlton, Corinth, attorney for appellee.
Before LEE, P.J., IRVING and ISHEE, JJ.
ISHEE, J., for the Court.
¶ 1. On July 20, 1999, Mary J. Wilson injured her lower back while inspecting a microwave for her employer, Whirlpool Corporation (Whirlpool). The Mississippi Workers' Compensation Commission (Commission) affirmed the decision of the administrative judge awarding permanent total disability benefits to Wilson on the grounds that Whirlpool failed to provide Wilson with suitable post-injury employment, and that Wilson reasonably but unsuccessfully attempted to find subsequent gainful employment. The Circuit Court of Lafayette County affirmed the Commission's decision. Aggrieved, Whirlpool appeals. Whirlpool asserts the following issues for this Court's review, which we list verbatim:
I. Whether Wilson proved that she had a permanent medical impairment.
II. Whether Wilson proved that she had a loss of wage-earning capacity as she failed to engage in any meaningful job search.
Finding no error, we affirm the decision of the circuit court.

FACTS
¶ 2. Wilson was a fifty-six-year-old resident of Thaxton, Mississippi at the time of the administrative judge's decision. She graduated from high school in 1965 and did not receive any further education or vocational training. Prior to her employment with Whirlpool, Wilson was occupied as a housewife and mother, until 1984, when she began work, at the age of thirty-eight, sewing garments at Riviera Shirt Company (Riviera). Wilson's work with Riviera lasted five years, and it occasionally required her to lift as much as twenty-five to thirty pounds.
¶ 3. Wilson began working for Whirlpool at the plant in Lafayette County in 1990. Initially, Wilson was assigned to numerous positions within Whirlpool. After working for Whirlpool for about one year, Wilson was assigned to an inspection/repair position. With the exception of several months following her injury, Wilson retained her inspection/repair position throughout the remainder of her employment with Whirlpool. According to Wilson, her duties in the inspector/repair position included standing for all ten hours of each work day, pushing and pulling microwave/oven combo units weighing as much as seventy to 100 pounds, and occasionally lifting microwave components weighing thirty to forty pounds.
¶ 4. On July 20, 1999, Wilson injured her lower back as she was pulling a microwave into her inspection area.[1] On May *269 22, 2000, Wilson filed a petition with the Commission, asserting that she received a compensable injury to her lower back. Whirlpool admitted that Wilson received a compensable injury, but denied that Wilson suffered a permanent disability or loss of wage-earning capacity. A hearing on the matter was held on April 2, 2003.
¶ 5. During the hearing, the deposition of Dr. Thomas L. Windham, Wilson's primary treating physician for her lower back injury, was admitted into evidence. Dr. Windham first examined Wilson on August 6, 1999, less than a month after her injury, and examined her on numerous occasions until June 27, 2000. Dr. Windham initially believed that Wilson suffered from a lumbar disc rupture, but after conducting a myelogram/CT scan, Dr. Windham concluded that Wilson suffered from something more like chronic back strain. Dr. Windham also testified during deposition that Wilson's disk protrusion was to the left, but she complained of leg pain on the right. Over the course of Dr. Windham's treatment of Wilson, he prescribed pain and nerve pills, as well as a series of epidural nerve block injections and a regimen of physical therapy. On October 4, 1999, Dr. Windham released Wilson to return to work at light duty only. When Wilson returned to Dr. Windham with ongoing complaints on November 2, 1999, Dr. Windham determined that her condition was unchanged. Consequently, he recommended that she undergo a functional capacity evaluation.
¶ 6. The functional capacity evaluation indicated that Wilson needed therapy, or "work hardening," in order to get back into her regular work. After a course of "work hardening" therapy, which brought about no improvement, Dr. Windham referred Wilson to Dr. Dowen Snyder for a second opinion. Dr. Snyder recommended that Wilson continue light duty work, if available, and that she adjust her lifestyle in order to deal with the pain. On February 22, 2000, Dr. Windham wrote a letter to the insurance case manager stating that Wilson reached maximum medical improvement on October 4, 1999, without an impairment rating or permanent work restrictions.
¶ 7. A second functional capacity evaluation was performed on June 21, 2000. The recommendations included aquatic physical therapy in order to decrease weight and increase functional abilities, as well as treatment for depression and a chronic pain program. The evaluation also concluded that Wilson was not able to return to her regular duties and that she was only able to lift at the sedentary range, i.e., lift while seated.
¶ 8. Wilson was also examined by Dr. Richard Sharp, a physical medicine specialist, on March 25, 2002. Dr. Sharp's report was also entered into evidence during the hearing. In the report, Dr. Sharp determined that Wilson had many pain syndromes and that additional injections might be helpful. Dr. Sharp also determined that, if Wilson declines further injections, she would be at maximum medical improvement. Dr. Sharp concluded that Wilson, due to the condition of her lower back, had a five percent whole person impairment. Nonetheless, the administrative judge determined that Dr. Sharp's examination of Wilson was "too far removed from Dr. Windham's last examination in June of 2000 for his opinions to be of any real probative value."
*270 ¶ 9. Wilson testified that, after her injury, she was provided with light duty work at Whirlpool, which primarily involved producing labels for products on a computer. Wilson further testified that she worked in this position for several months, until April of 2000, when her supervisors, Carol Pringle and O'Neal Warren, told her that they had received a letter from Dr. Windham stating that she had been released to work without restrictions. Consequently, Pringle and Warren told Wilson that she had to return to work on the assembly line, which had no light duty positions.
¶ 10. Wilson testified that, after the meeting with Pringle and Warren, she returned to Dr. Windham, as it was her understanding that she was to be restricted to light duty. On April 7, 2000, Dr. Windham gave Wilson a return-to-work slip, which restricted her to light duty. Wilson testified that she gave the slip to Whirlpool's workers' compensation supervisor, John Roberts, and that she discussed the light duty restriction with Pringle and Warren. According to Wilson, Pringle and Warren responded that, regarding the job on the assembly line, she could "either take it or leave it." Wilson then visited her family practitioner, Dr. William Spencer, who, on May 15, 2000, also provided her with a return-to-work slip restricting her to light duty. Wilson testified that she once again provided her supervisors with the documentation, and that they informed her that she could either go back to full duty on the assembly line or leave her employment.
¶ 11. Wilson further testified that, because she wanted to continue working at Whirlpool, she had her attorney write a letter to Whirlpool requesting that she be given a job consistent with Dr. Windham's and Dr. Spencer's light duty restriction. According to Wilson, she took this letter to Roberts, who "laughed in [her] face and told [her] that [she] was a liar." Wilson then spoke with Pringle and Warren, who gave her a job installing wiring on the backs of oven units. Nevertheless, because that job involved pushing and pulling as much as fifty pounds, Wilson was only able to continue in that position for about two weeks, working only a little over an hour each day. Consequently, on June 28, 2000, Wilson voluntarily resigned from her employment with Whirlpool.
¶ 12. In August of 2000, Wilson began looking for other employment. Wilson testified that, in August of 2000, she contacted five businesses in Pontotoc, Mississippi, and one in Ecru, Mississippi, seeking employment. She also testified that she registered with the Mississippi Employment Security Commission on August 8, 2000. According to Wilson, she did not get a response from any of the businesses, so she contacted four of them a second time by telephone in 2001. Wilson testified that, in May of 2002, she returned to several of the previously contacted businesses, in addition to five other businesses. Unfortunately, none of Wilson's efforts yielded a favorable response. Wilson admitted that, after August of 2000, her efforts to obtain employment became "half-hearted" because she believed that the businesses were seeking younger employees. She further acknowledged that she has not attempted to find employment since May of 2002, and that she has not worked since May of 2000.
¶ 13. Wilson testified that, since she is no longer able to work, her pain keeps her in the bed most of the time. She further testified that she is not able to do all of the household duties that she did before the injury, such as run a vacuum, take out the garbage, or go to the mailbox. Wilson insisted that she was in constant pain. Furthermore, Wilson testified that the medications she takes every day make her *271 very sleepy and dizzy. After Wilson finished testifying, she rested her case. Whirlpool also rested its case at the conclusion of Wilson's testimony.
¶ 14. On June 16, 2003, the administrative judge determined that, based on the work restrictions imposed by Dr. Windham and Wilson's ongoing pain, Wilson had sustained a permanent medical and occupational disability as a result of her lower back injury. The administrative judge also determined that Wilson made a prima facie case of total loss of wage-earning capacity, as she produced evidence that Whirlpool failed to provide her with employment after maximum medical recovery and that she unsuccessfully attempted to find other employment. After finding that Whirlpool failed to produce evidence to rebut Wilson's prima facie case, the administrative judge concluded that Wilson was entitled to permanent disability benefits. The Commission affirmed the decision of the administrative judge on February 17, 2004, and on March 23, 2004, the Circuit Court of Lafayette County affirmed the judgment of the Commission. Aggrieved, Whirlpool appeals.

STANDARD OF REVIEW
¶ 15. This Court's scope of review in workers' compensation cases is limited to a determination of whether the decision of the Commission is supported by substantial evidence. Westmoreland v. Landmark Furniture, Inc., 752 So.2d 444, 447(¶ 7) (Miss.Ct.App.1999). The Commission sits as the ultimate finder of fact; its findings are subject to normal, deferential standards upon review. Natchez Equip. Co. v. Gibbs, 623 So.2d 270, 273 (Miss. 1993). We will only reverse the Commission's rulings where findings of fact are unsupported by substantial evidence, matters of law are clearly erroneous, or the decision was arbitrary and capricious. Westmoreland, 752 So.2d at 448(¶ 8); Hale v. Ruleville Health Care Ctr., 687 So.2d 1221, 1225 (Miss.1997).

ISSUES AND ANALYSIS
I. Whether Wilson proved that she had a permanent medical impairment.
¶ 16. Whirlpool asserts that Wilson's claim of disability is unsupported by medical findings, as required by Mississippi Code Annotated section 71-3-3(i) (Rev. 2000).[2] In support of this argument, Whirlpool cites Dr. Windham's deposition testimony that Wilson's myelogram/CT scan revealed that her disc protrusion was to the left, but she complained of pain on the right. Whirlpool further cites Windham's testimony that Wilson reached maximum medical improvement on October 4, 1999, without an impairment rating or permanent work restrictions. Finally, regarding Dr. Sharp's finding of five percent whole person impairment, Whirlpool cites the determination of the administrative judge that Dr. Sharp's report was "too far removed from Dr. Windham's last examination in June of 2000 for his opinions to be of any real probative value." Thus, Whirlpool maintains that the medical proof in this case establishes that Wilson had no physical impairment and no work restrictions. We disagree.
¶ 17. The second functional capacity evaluation, performed on June 21, 2000, concluded that Wilson was not able to return to her regular duties and that she *272 was only able to lift at the sedentary range. The evaluation further recommended that Wilson begin a chronic pain program. Moreover, both Dr. Windham and Dr. Spencer provided Wilson with return-to-work slips that restricted her to light duty work only. Furthermore, Dr. Snyder also recommended that Wilson continue light duty work, if available, and that she adjust her lifestyle in order to deal with the pain. Therefore, we find substantial evidence to support the Commission's decision that Wilson sustained a permanent medical and occupational disability as a result of her lower back injury. This issue is without merit.
II. Whether Wilson proved that she had a loss of wage-earning capacity as she failed to engage in any meaningful job search.
¶ 18. Whirlpool asserts that the record shows that it attempted to reinstate Wilson into a full-time position. Whirlpool further asserts that Wilson failed to prove that she made reasonable efforts to find similar or other employment.
¶ 19. Mississippi Code Annotated section § 71-3-3(i), provides that the party claiming disability benefits bears the burden of making a prima facie showing that he has sought and been unable to find work "in the same or other employment." Hale, 687 So.2d at 1226. "When the claimant, having reached maximum medical recovery, reports back to the employer for work, and the employer refuses to reinstate or rehire him, then the claimant has established a prima facie showing of total disability." Id. Once a prima facie case for total disability has been established, the employer bears the burden of proving that the claimant has suffered only a partial disability or no loss of wage-earning capacity. Id. (citing Jordan v. Hercules, Inc., 600 So.2d 179, 183 (Miss.1992)). In order to meet this burden, the employer may present evidence showing that "the claimant's efforts to obtain other employment was a mere sham, or less than reasonable, or without proper diligence." Hale, 687 So.2d at 1227 (citing Thompson v. Wells-Lamont Corp., 362 So.2d 638, 641 (Miss. 1978)).
¶ 20. According to Dr. Windham, Wilson reached maximum medical improvement on October 4, 1999. After reaching maximum medical improvement, Wilson attempted to continue working for Whirlpool in a light duty position. According to Wilson's testimony, however, in April of 2000, her supervisors required her to return to full duty on the assembly line or leave. Wilson further testified, after being given no choice but to resign from her employment with Whirlpool, she contacted eleven different businesses seeking employment. She also testified that she registered with the Mississippi Employment Security Commission.
¶ 21. We find substantial evidence to support the Commission's finding that Whirlpool failed to rebut Wilson's testimony that Whirlpool failed to provide her with work consistent with her light duty restriction. Even though the administrative judge noted that Wilson's efforts to find gainful employment were "somewhat suspect," it is the long-standing rule of this Court that doubtful cases must be resolved in favor of compensation, so as to fulfill the beneficent purposes of the statute. E.g., Meridian Prof'l Baseball Club v. Jensen, 828 So.2d 740, 744-45 (¶ 10) (Miss.2002); Marshall Durbin Cos. v. Warren, 633 So.2d 1006, 1010 (Miss.1994). Therefore, this issue is without merit.
¶ 22. THE JUDGMENT OF THE CIRCUIT COURT OF LAFAYETTE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
*273 KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES, AND ROBERTS, JJ., CONCUR.
NOTES
[1] Wilson also injured her left knee while working for Whirlpool, on February 17, 1994. This claim had a different docket number, but, for hearing purposes, was consolidated with the claim for injury to her lower back. Regarding the claim for injury to the left knee injury, however, the administrative judge found that Wilson failed to prove that she sustained an occupational disability in excess of the ten percent partial disability for which she had already been paid. Thus, the claim for injury to her left knee is not at issue in this appeal.
[2] Mississippi Code Annotated section 71-3-3(i) (Rev.2000), provides that "`[d]isability'" means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or other employment, which incapacity and the extent thereof must be supported by medical findings."