BARNES, J.,
for the Court:
¶ 1. After filing six petitions to controvert for work-place injuries that he allegedly sustained from 1996 through 2007, Levon Flowers was awarded temporary and permanent partial disability benefits by an administrative judge (AJ). Flowers was denied benefits for workplace injuries allegedly sustained in 2005 and 2007, and his claims for injuries sustained in 1999 and 2000 were found to be barred by the statute of limitations. The AJ’s order was affirmed by the Mississippi Workers’ Compensation Commission (Commission) and the Circuit Court of Panola .County.
¶ 2. Flowers now appeals, claiming that he “sustained greater than 25% loss of wage-earning capacity” with regard to his lower-back injuries.' He also contends that he had not reached maximum medical improvement (MMI) for his 2007 foot injury and, therefore, is entitled to additional temporary total disability benefits for his foot injury until he reaches MMI. Flowers alternatively argues that if it is found that he reached MMI for his 2007 foot injury, then the Commission erred in not finding that he was entitled to permanent total disability benefits.
¶ 3. After reviewing the evidence and testimony, we affirm on the issue of loss of wage-earning capacity for the 1996 back injury. However, we reverse the Commission’s decision to terminate temporary total disability benefits for Flowers’s 2007 foot injury as of January 14, 2008, as the evidence does not support a finding that Flowers reached MMI as of that date, and we remand for further consideration of this issue in accordance with this opinion. Since permanent disability benefits cannot be awarded until a claimant has reached MMI, we also reverse the Commission’s finding that permanent disability benefits should not be awarded for the 2007 foot injury, as any such determination would be premature. In regard claims of the Appel-lees/Cross-Appellants on cross-appeal, we find no error.
SUMMARY OF FACTS
¶4. Flowers had been a front-end mechanic/machine operator for Crown Cork & Seal USA (Crown) since 1990. His job required him to stand and walk on a concrete floor for twelve-hour shifts and, occasionally, to climb stairs, catwalks, and ladders. In April 1996, Flowers suffered a back injury while attempting to stop a two-hundred-and-fifty-pound table from falling over. He was paid temporary disability benefits for this injury and was compensated for his medical treatment.
¶ 5. Flowers suffered an aggravating injury to his back in October 1999, while putting oil in a machine. He reported the injury and was treated by a physician. During his treatment, Flowers was diagnosed with degenerative disc disease. In October 2000, Flowers slipped at work and twisted his back. He immediately notified his supervisor of the injury and sought treatment. Then, in August 2005, Flowers claimed he injured his neck while lifting an object at work. No surgical procedure *1013 was recommended for any of these injuries.
¶ 6. Flowers was diagnosed with prostate cancer in March 2007, for which he was successfully treated. During this time, he received short-term disability benefits. After returning to work, Flowers re-injured his back on June 28, 2007, while trying to break loose a pipe. He immediately reported the injury and sought treatment. It was determined that Flowers had returned to work too soon after prostate surgery, so he remained off work throughout the summer of 2007.
¶ 7. While off work, Flowers sought treatment in August 2007 from a podiatrist, Dr. Chris Varva, for shooting pain in his left foot. Flowers claimed that he had suffered from the foot pain for one to two years. Dr. Varva concluded that Flowers had either a ganglion cyst or spurring in the metatarsal joint. He recommended Flowers wear a walking boot and take a six-week leave of absence from work. Dr. Varva noted that surgery might be a option, but wanted Flowers to keep weight off his foot for six weeks before making that decision. Flowers sought a second opinion from Dr. Chad Webster, another podiatrist. Dr. Webster placed Flowers in a walking brace and wanted to fit him for a permanent prosthetic brace.
¶ 8. In October 2007, Flowers filed for short-term disability benefits for his foot injury. In the first application, it was noted that the injury was work-related, and the application was denied. Flowers filled out a second application; this time the application noted that the injury was not work-related, and benefits were awarded.
¶ 9. Dr. Varva re-examined Flowers on November 3, 2007, and reluctantly allowed him to return to work on December 3, 2007, against the doctor’s recommendation. Dr. Varva was concerned Flowers would risk injury if . he returned to work at that time, but Flowers insisted upon returning to work. Dr. Webster also examined Flowers in January 2008 and released him for work with no restrictions if he wore his brace.
¶ 10. However, before allowing Flowers to return to work, Crown obtained an opinion by a vocational rehabilitation specialist, Morris Selby, who opined that “[a] person who has foot problems that are aggravated by walking would have difficulty performing] this job.” Crown also had Flowers examined by Dr. Fred Sandifer, an orthopedic surgeon. In his report, Dr. Sandifer stated:
I responded to the questions of Crown Cork and Seal, this patient does have some orthopedic symptoms, which may be aggravated by standing 12 hours a day. The patient expresses his desire to return to work and I think the modification with a conditional trial of returning to work for six weeks with understanding if he is unable to do so will lead to his not being employed. The patient’s symptoms are fairly mild, but may be exacerbated by the prolonged standing requirement. He has been seen by rehabilitation services who actually evaluated the patient’s job and felt that the patient has foot problems that are aggravated by walking and would not be able to perform his job and I concur.
Although he never examined Flowers, Dr. David Spratt also gave Crown a medical opinion that Flowers’s medical impairment would make it unsafe for him to return to work on unrestricted duty. As a result, Crown prohibited Flowers from returning to work. Flowers sought employment in a few mechanic retail shops and with a retail grocer, but was unsuccessful.
PROCEDURAL HISTORY
¶ 11. Flowers filed six petitions to controvert concerning his various injuries be *1014 tween 1996 and 2007: 1996 back injury (G-5239); 1999 back injury (H-6719); 2000 back injury (H-6720); 2005 back injury (J-3510); 2007 back injury (J — 8089); and 2007 foot injury (J-8738). The Appellees admitted that the 1996 back injury and the 2007 back injury were compensable injuries. However, the Appellees argued that the claims for the 1999 and 2000 injuries were barred by the statute of limitations and that the evidence did not support com-pensability for the 2005 back injury. They also denied any responsibility for Flowers’s 2007 foot injury under the doctrine of equitable estoppel, claiming that his foot injury was not work-related and that Flowers had received short-term disability benefits for the injury.
¶ 12. A hearing was held before the AJ on October 27, 2009. At the hearing, the parties stipulated to the following: (1) Flowers’s weekly wage in 1996 was $426.40; (2) Flowers suffered a compensa-ble back injury on April 4, 1996; and (3) Flowers suffered a compensable back injury on June 28, 2007. The AJ issued an order on April 7, 2010, finding:
1. The employer and carrier pay permanent partial disability benefits to the claimant at a rate of $71.07 per week for 450 weeks, beginning February 7, 2001, plus interest at the legal rate and penalties on any accrued benefits with regard to the 1996 back injury claim;
2. The average weekly wage of the claimant as of September 21, 2007 is $503.32;
3. The employer and carrier pay temporary disability benefits at a rate of $335.35 from September 21, 2007 to January 14, 2008[,] with a credit for any days the claimant was paid wages during that period, plus interest at the legal rate and penalties, with regard to the 2007 foot injury claim;
4. The claimant is not entitled to any permanent disability benefits with regard to the 2007 foot injury claim;
5. The claimant is not entitled to any disability benefits with regard to the June 28, 2007 back injury claim;
6. The alleged back injury claims in 1999 (H-6719) and 2000 (H-6720) are barred by the applicable statute of limitations and are hereby dismissed;
7. The claimant failed to meet his burden of proof that he suffered a work related back injury on August 22, 2005 and, therefore, claim (J-3510) is hereby denied and dismissed;
8. The services provided by Baptist Memorial Hospital and by Dr. Rich-ey are reasonable, necessary and either emergent or in the chain of referral and, therefore, are the responsibility of the employer and carrier under the Medical Fee Schedule;
9. The employer and carrier shall continue to provide reasonable and necessary medical supplies and services as required by the nature of the claimant’s injuries and the process of recovery therefrom, pursuant to Mississippi] Code Ann[otated] Section 71-3-15 and the Medical Fee Schedule with regard to claims G-5239 (1996 back injury), J-8089 (2007 back injury) and J-8738 (2007 foot injury).
On September 21, 2010, the Commission affirmed the AJ’s order without comment. Flowers appealed the Commission’s decision to the Panola County Circuit Court, which also affirmed the order.
¶ 13. In his appeal to this Court, Flowers asserts , that the order of the circuit court, affirming the Commission’s findings, *1015 should be reversed as he: (1) “sustained greater than 25% loss of wage-earning capacity” with regard to his lower-back injuries; (2) has not reached MMI for his 2007 foot injury; and (3) is entitled to additional temporary total disability benefits for his foot injury until he reaches MMI. Flowers alternatively argues that if it is found that he has reached MMI for his 2007 foot injury, then the Commission erred in not finding that he was entitled to permanent total disability benefits, claiming the evidence supports a finding that he was unable to return to work due to his “medical impairment.”[1]
¶ 14. The Appellees allege on cross-appeal that the Commission erred in finding Flowers’s foot injury was compensable and in awarding wage loss for the 1996 back injury. The Appellees also contend they should not be financially responsible for medical treatment by Dr. Steven Rich-ey.
¶ 15. After reviewing the evidence and testimony, we affirm the Commission’s findings regarding loss of wage-earning capacity for the 1996 back injury. However, we find merit to Flowers’s claim that he had not reached MMI for his 2007 foot injury on the date that his temporary total disability benefits ceased and conclude that the Commission erred in its determination of the end date for Flowers’s temporary disability benefits. We, therefore, reverse the Commission’s finding that temporary disability benefits ceased on January 14, 2008, and remand for a determination of the date that Flowers reached MMI for his 2007 foot injury and any adjustment of temporary total disability benefits in accordance with the Commission’s findings on remand. Furthermore, since a claimant must reach MMI before consideration of permanent disability benefits, we also reverse the Commission’s denial of permanent disability benefits for the foot injury, as such determination is premature, and remand for consideration of whether Flowers is entitled to permanent disability benefits for his 2007 foot injury once the date for MMI has been determined.
¶ 16. In regard to the Appellees’ claims on cross-appeal, we find no error.
STANDARD OF REVIEW
¶ 17. The Commission serves as “the ultimate fact-finder ... [and] may accept or reject an AJ’s findings.” Smith v. Tronox LLC, 76 So.3d 774, 778 (¶ 14) (Miss.Ct.App.2011) (quoting Smith v. Masonite Corp., 48 So.3d 565, 570 (¶ 19) (Miss.Ct.App.2010)). If the Commission’s findings of fact are supported by substantial evidence, we will affirm. Id. “In other words, this Court will reverse an order of the Workers’ Compensation Commission only where such order is clearly erroneous and contrary to the overwhelming weight of the evidence.” Id.
DISCUSSION
I. 1996 BACK INJURY
¶ 18. Taking into account the testimony, medical evidence, and injury history, the AJ found that Flowers had “suffered a 25% loss of wage-earning capacity as a result of his 1996 injury.” As a result, the AJ calculated Flowers’s loss of wage-earning capacity as 25% of Flowers’s 1996 average weekly wage ($71.07) for 450 weeks, the maximum length of time allowed by statute.
¶ 19. Flowers appeals this finding, claiming he suffered a greater loss of *1016 wage-earning capacity. Before addressing this argument, however, we will discuss the Appellees’ claim that Flowers fully recovered from his 1996 injury and that the “initiating, precipitating condition” was from his 1999 barred claim; thus, it was error for the Commission to award permanent partial disability benefits for his 1996 injury.
i. Whether Flowers fully recovered from his 1996 back injury.
¶ 20. Both parties admit that Flowers had reached MMI from his 1996 back injury. The Appellees contend that Flowers completely recovered from his 1996 injury and observe that Flowers returned to work soon after this injury at the same or a higher rate of pay. The Appel-lees note that the next evidence of injury was not until 1999 and 2000 and that these claims are time-barred. They argue that these subsequent back injuries, which were found to be non-compensable, were due to Flowers’s degenerative disc disease. Therefore, they assert that Flowers suffered no loss of wage-earning capacity as a result of his 1996 back injury.
¶ 21. We find the Appellees’ assertions are not supported by the -evidence. Although Dr. Rodney Olinger, the neurosurgeon who had treated Flowers, testified that Flowers suffered from degenerative disc disease, he also opined that Flowers’s 1996 injury contributed to his degenerative disc.
Q. Doctor, can we state when you saw him then in March 2000 that the injury — whatever happened to him in 1996 has subsided and we’re dealing with a disease now of this man?
A. Well — and this is — this is a hard question to really — to really answer. I mean, obviously, before '96, obviously, he had no problems. And I never saw him before '96. I didn’t even see him until 2000. And supposedly, he had no problems. If he had an injury — I mean, he certainly could have had a, you know, degenerative disk at that level. He could have had an injury to that disk that made him symptomatic. And he’s had flare-ups as he’s continued to work. It’s hard to say. It’s hard to say if, basically his injury has — his original injury has completely subsided. And if we have an asymptomatic degenerative disk before and we have a symptomatic degenerative disk now, what’s to blame for that? That’s where I have a problem. And I’m going to tell you that medicine doesn’t really give you an answer for that.
[[Image here]]
I can tell you that his pain now is mainly from his degenerative disk.... [H]e probably had degenerative disk before '96. And he got injured, and now he’s got a painful degenerative disk, which is flaring up sometimes at work and sometimes not at work. And, you know, the acute injury is over, but he’s got this — now he’s got this painful disk that’s recurring. I don’t know who’s responsible, to be honest.
[[Image here]]
Q. This is just the progression, again, of the degenerative disk disease, correct?
A. Yes, the progression, certainly, of his degenerative disk problems, exactly.
[[Image here]]
Q. Doctor, based upon your chart, would it be fair to say that Mr. Flowers’[s] back condition never became fully dominant post[-]1999?
A. I doesn’t seem to be, because he has — like when I didn’t see him for *1017 three years, he says he was under continual treatment with Dr. Haire. Obviously, if he had no problems for three years, I may have a different opinion. But, I mean, he clearly stated to me he had been seeing Dr. Haire.... And if this is true, then I would have to say it never really stopped.
[[Image here]]
A. [H]e did not have a subsequent injury that was different and was now the problem rather than the original injury, because he’s always had back and left loiuer extremity discomfort sometimes mainly through that side. Only on one occasion did he have some problems down his right leg, and we just see that as a worsening of his degenerative problems. It’s always mainly back and left leg.
[[Image here]]

I would have to say that the '96 injury, you know, significantly contributed to the fact we’re treating him for a painful degenerative disk over these years.

(Emphasis added). The Commission could reasonably find from Dr. Olinger’s testimony that Flowers’s 1996 injury was ongoing and contributed to his degenerative disc disease.
¶ 22. Flowers testified that from 1996 to 1999, he “was still having symptoms froip the first injury in [his] back.” Further, on cross-examination at the hearing, Flowers noted that the pain had existed since his 1996 injury:
Q. Mr. Flowers, since 1996 have you ever been pain free?
A. Not pain free, but there have been times, you know, when I first-in '96 my back, like I said, I hurt it then. It was an off and on pain, and then after I hurt it the other times later on, then the pain got to gradually be more and more and more.
¶ 23. Thus, while the evidence showed that Flowers suffered from degenerative disc disease, there was substantial evidence that he suffered, and continued to suffer, from a work-related injury sustained in 1996.
When an injury is work connected, all medical problems or disabilities that derive from that primary injury or the process of the worker’s recovery therefrom are also compensable, so long as the progression of complications has some causal relation to the original injury and is not the result of an intervening independent injury.
John R. Bradley & Linda R. Thompson, Mississippi Workers’ Compensation § 4:24 (Thompson-West 2012). As the Mississippi Supreme Court has stated:
It avails an employer nothing that a worker may have had an asymptomatic preexisting degenerative condition. Such a person experiences no pre-acci-dent occupational disability. Our compensation Act concentrates upon the impact of the accident upon the employee’s wage[-]earning capacity. An industrial accident may well, in a medical or physiological sense, only aggravate [a] theretofore existing (but asymptomatic) degenerative condition.
Marshall Durbin, Inc. v. Hall, 490 So.2d 877, 880 (Miss.1986).
¶ 24. The AJ concluded in his order that Flowers “had symptoms and problems with his back since the 1996 injury.... His back never completely improved after the 1996 injury.” Furthermore, in dismissing the claims for the 1999 and 2000 back injuries, the AJ noted that the dismissal was likely “inconsequential,” as the evidence supported that these injuries were “more likely expected aggravations and problems arising from the 1996 inju *1018 ry[.]” We find that the evidence supports this finding.
ii. Whether Flowers sustained a greater loss of wage-earning capacity than that determined by the Commission.
¶ 25. Therefore, the question remaining regarding this particular issue is whether the AJ erred in assigning only permanent partial disability and a loss of wage-earning capacity of 25%. Citing Crown’s refusal to allow him to return to work in 2007, Flowers claims that he suffered a greater than 25% loss of wage-earning capacity, and requests this Court to reverse the Commission’s decision, finding he “has sustained permanent total disability or alternatively has sustained a percentage of permanent disability to his body as a whole far in excess of that found by the Commission.”
¶ 26. “The Commission must determine the fact and extent of a claimant’s loss of wage-earning capacity by considering the evidence as a whole.” Scott v. KLLM, Inc., 37 So.3d 713, 717 (¶ 16) (Miss.Ct.App.2010) (citing DeLaughter v. S. Cent. Tractor Parts, 642 So.2d 375, 379 (Miss.1994)). Mississippi Code Annotated section 71 — 3—3(i) (Rev.2011) defines “disability” as the “incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or other employment, which incapacity and the extent thereof must be supported by medical findings.”
¶ 27. “In order to be deemed permanently totally disabled under [Mississippi Code Annotated sjection 71-3-17(a) (Rev.2000), a claimant must show something more than an inability to return to the job existing at the time of injury.” Adolphe Lafont USA v. Ayers, 958 So.2d 833, 839 (¶ 18) (Miss.Ct.App.2007) (citing McCray v. Key Constructors, Inc., 803 So.2d 1199, 1203 (¶ 17) (Miss.Ct.App.2000)). “To demonstrate total disability, the claimant must show that he has made a diligent effort, but without success, to obtain other gainful employment.” Id. “[0]nce the claimant has made a prima facie case of total disability, the burden shifts to the employer to show that the employee’s efforts were not reasonable or constituted a mere sham.” Id. (citation omitted).
¶ 28. Flowers correctly notes that when an employer “refuses to reinstate or rehire” a claimant who has reached MMI and has reported for work, “the claimant has established a prima facie showing of total disability.” Moore’s Feed Store, Inc. v. Hurd, 100 So.3d 1011, 1020 (¶ 28) (Miss.Ct.App.2012) (quoting Whirlpool Corp. v. Wilson, 952 So.2d 267, 272 (¶ 19) (Miss.Ct.App.2006)).
Once a prima facie case for total disability has been established, the employer bears the burden of proving that the claimant has suffered only a partial disability or no loss of wage-earning capacity. In order to meet this burden, the employer may present evidence showing that the claimant’s efforts to obtain other employment were a mere sham, or less than reasonable, or without proper diligence.
Id. (internal citations and quotations marks omitted).
¶ 29. Reviewing the evidence as a whole, we find no error in the AJ’s finding regarding the 1996 back injury. This particular injury did not render Flowers permanently and totally disabled; he continued to work at Crown for over ten years after suffering the initial back injury in 1996. Further, the testimony reflected that Flowers did not miss a significant amount of work due to his back injury or the subsequent aggravations resulting *1019 from the injury, and there was no testimony that the back injury prohibited Flowers from performing the duties of this job.
¶ 30. It was not until 2008, after Flowers was diagnosed with his foot injury, that Crown prohibited Flowers from returning to work. As acknowledged by Flowers’s counsel during arguments before this Court, Flowers’s foot injury was a “game changer.” Accordingly, the AJ’s finding of permanent partial disability and loss of wage-earning capacity of 25% for the 1996 back injury is supported by the evidence.
II. 2007 FOOT INJURY
¶ 31. Flowers contends that “the Commission committed plain error in finding that [he] reached maximum medical improvement for the work[-]related left foot injury” and, consequently, in awarding a closed period of temporary disability. Before we discuss Flowers’s argument, however, we find it necessary to address Crown’s claim on cross-appeal that the AJ erred in finding the 2007 foot injury was work-related.
i. Whether Flowers’s 2007 foot injury was work-related.
¶ 32. Flowers’s petition for his September 21, 2007 foot injury alleged that the injury fell under the “[c]umulative impacVtrauma rule,” as he was unaware until that time that his foot injury was a work-related condition. Flowers admits that he cannot point to a specific trauma that occurred to his foot. The Appellees observe that in his application for short-term disability benefits, Flowers indicated that his injury was not work-related. However, it was claimed at the hearing that Flowers originally marked on the form that his condition arose out of his employment, but a Crown personnel employee instructed him to state that his condition was not work-related in order to expedite the receipt of his short-term disability benefits.
¶ 33. The AJ, in his order, admitted that it was a “close question as to com-pensability”; however, he found Flowers “met his burden of proof that he suffered a work[-]related foot injury on September 21, 2007.” He commented on the testimony of both podiatrists that the type of work required of Flowers would aggravate his underlying condition, causing pain. Furthermore, Dr. Varva testified that his “belief [was] that the symptoms arose from prolonged standing.” He further stated: “[Twelve] hours with minimal breaks from weight-bearing will aggravate any foot condition, symptomatic foot condition.” After Dr. Varva examined Flowers on September 12, 2007, he faxed a letter requesting that Flowers be placed on a leave of absence “as [the] condition is likely work-related.”
¶ 34. The doctors and experts hired by Crown also opined that the prolonged standing would aggravate Flowers’s foot condition. The Mississippi Supreme Court in Rathborne, Hair & Ridgeway Box Co. v. Green, 237 Miss. 588, 594, 115 So.2d 674, 676 (1959), held:
The rule in this State is that when a preexisting disease or infirmity of an employee is aggravated, lighted up, or accelerated by a work-connected injury, or if the injury combines with the disease or infirmity to produce disability, the resulting disability is compensable. A corollary to the rule just stated is that when the effects of the injury have subsided, and the injury no longer combines with the disease or infirmity to produce disability, any subsequent disability attributable solely to the disease or infirmity is not compensable.
¶ 35. Based on the evidence, we find the AJ’s finding that the 2007 foot injury *1020 was work-related to be supported by substantial evidence.
ii. Whether Flowers reached MMI for his 2007 left foot injury.
¶ 36. The Commission awarded temporary disability benefits from September 21, 2007, until January 14, 2008, for Flowers’s foot injury. The AJ selected the date for the termination of temporary disability benefits based upon the date that Flowers was given permission by Dr. Webster to return to work and after he had been fitted with his orthotic brace.
¶ 37. Flowers contends that the failure to assign him a permanent partial impairment rating is proof that neither podiatrist had placed him at MMI. He also notes that the status of his foot injury was the main reason that he was not allowed to return to work. Thus, Flowers claims that the Commission’s decision to award “a closed period of temporary total disability benefits was absolutely arbitrary and capricious,” and he is entitled to an extended period of temporary total disability benefits until such date that MMI is determined. Alternatively, Flowers argues that if this Court determines that he has reached MMI for his foot injury, the Commission erred in failing to find he suffered a permanent disability for his left foot injury.
¶ 38. Flowers’s last office visit with Dr. Webster was on January 14, 2008. Dr. Webster released Flowers to return to work at that time and did so for “[f]ull duty without restriction with the brace from his foot[.]” However, when questioned about whether Flowers had reached MMI, Dr. Webster acknowledged that he had not.
■Q. In your opinion[,] had [Flowers] reached maximum medical improvement from a podiatry standpoint yet at that time?
A. I would say no. He said it was improved and he [was] hoping the custom brace would reach that.
The AJ also noted in his order that when Dr. Webster released Flowers to return, he was not at MMI. There was no evidence of when or if Flowers did reach MMI for his foot injury. Flowers testified at the hearing in 2010 that he had recently seen Dr. Varva for pain in his food and that surgery was recommended; however, medical notes from this visit were not included in the record. Therefore, Flowers’s claim that he had not reached MMI for his foot injury as of January 14, 2008, is supported by the testimony.[2]
¶ 39. “Temporary total disability extends until maximum medical recovery is reached.” Alumax Extrusions, Inc. v. Wright, 737 So.2d 416, 420 (¶ 10) (Miss.Ct.App.1998) (citing Miss.Code Ann. § 71-3-17(b) (Rev.1995)). “[T]he date upon which a claimant is released to work is not necessarily the date on which that employee’s temporary disability has ended.” Id. (citing Vardaman S. Dunn, Mississippi Workmen’s Compensation Law § 75 (3rd ed.1990)).
¶ 40. There was no finding by either podiatrist or the Commission that Flowers had reached MMI for his foot injury as of January 14, 2008. Accordingly, under the .law, temporary disability must extend until *1021 there is a finding of MMI. We reverse the Commission’s decision to terminate the award of temporary total disability benefits as of January 14, 2008, and remand for a determination of when Flowers reached MMI for his 2007 foot injury and the appropriate award of temporary benefits based on Commission’s findings.
iii. Whether Flowers’s 2007 foot injury warranted a finding of permanent total disability.
¶ 41. The AJ did not award permanent disability for the foot injury because he found that “neither podiatrist had assigned Flowers a permanent partial impairment rating to the scheduled member and neither place any restrictions on him as a result of his foot injury.” Flowers cites Jordan v. Hercules, 600 So.2d 179, 183 (Miss.1992), a case in which the Mississippi Supreme Court stated:
When the claimant, having reached maximum medical recovery, reports back to his employer for work, and the employer refuses to reinstate or rehire him, then it is prima facie that the claimant has met his burden of showing total disability. The burden then shifts to the employer to prove a partial disability or that the employee has suffered no loss of wage[-]earning capacity.
(Emphasis added). “The reason for the presumption when a worker tries to return to the same employer after [MMI] is that only then might the employer’s decision on whether to re-hire be a good indicator of employability.” Bradley & Thompson at § 5:26 n. 3.
¶ 42. The presumption from Jordan of prima facie total disability is not applicable in this instance. As we have already determined, Flowers had not reached MMI when he attempted to return to work. In Lifestyle Furnishings v. Tollison, 985 So.2d 352, 360 (¶24) (Miss.Ct.App.2008), we addressed a situation where the claimant returned to work prior to reaching MMI. We found that, due to this fact, no prima facie case of total disability under Jordan existed. See also Hale v. Ruleville Health Care Ctr., 687 So.2d 1221, 1227-228 (Miss.1997) (claimant’s only attempts to return to work occurred prior to date set for MMI; therefore, she did not establish a prima facie case for total disability under Jordan).
¶ 43. “[A] claimant cannot receive permanent disability benefits until he or she has reached MMI.” Barber Seafood, Inc. v. Smith, 911 So.2d 454, 460 (¶ 25) (Miss.2005) (citing Houston Contracting Co. v. Reed, 231 Miss. 213, 221, 95 So.2d 231, 234 (1957)). “If a claimant who has not reached MMI presents no evidence that he or she will be totally disabled when MMI is reached, any claim for P[erman-ent] T[otal] Disability] benefits is premature.” Crum v. Richmond, 46 So.3d 633, 636 (Fla.Dist.Ct.App.2010) (citing Olmo v. Rehabcare Starmed/SRS, 930 So.2d 789, 793 (Fla.Dist.Ct.App.2006)).
¶ 44. As already stated, the record clearly reflects that Flowers had not reached MMI when he attempted to return to work. Therefore, any consideration of permanent disability benefits relating to the 2007 foot injury would be “premature” until the date of MMI for Flowers’s foot injury is determined. Accordingly, we reverse the Commission’s denial of permanent disability benefits for Flowers’s 2007 foot injury and remand for consideration of whether Flowers is entitled to permanent disability benefits once it is determined that MMI has been reached.
CROSS-APPEAL
¶ 45. We will now address the remaining unaddressed issues brought by the Ap-pellees on cross-appeal.
*1022 I. Whether Flowers is procedurally barred from appealing the Commission’s findings regarding his 2007 foot injury.
¶ 46. The Appellees claim that Flowers’s April 23, 2010 “Petition for Review of the Order of the Administrative Judge” did not reference his petitions to controvert for the 2007 back injury and the 2007 foot injury. Thus, they claim the Commission erred in considering these claims and that Flowers is precluded from seeking benefits on these claims.
¶ 47. We find no merit to this argument. First, Flowers does not appeal the denial of an award of disability for the 2007 back injury. Second, the petition clearly asserts the same arguments regarding the 2007 foot injury that have already been addressed by this Court in the above discussion.
II. Whether the Commission erred in ruling the Appellees were responsible for payment of medical treatment by Dr. Steven Richey.
¶ 48. The Appellees argue that they should not have been held responsible for reimbursing Flowers for his medical treatment by Dr. Richey at Baptist Memorial Health Center in September 2008. Flowers had sought treatment for his back, claiming that he re-injured himself doing yard work.
¶ 49. “An employer is to pay for medical treatments that are reasonable and necessary and that result from the work-related injury.” Wesson, 811 So.2d at 467 (¶ 9). The AJ found that the medical services by Dr. Richey were “for expected pain aggravation from the claimant’s work[-]related back injury and are the responsibility of the employer and carrier.” We hold that the AJ’s finding on this issue is supported by substantial evidence.
III.Whether Flowers’s disability benefits for his 2007 foot injury are barred by the doctrine of equitable estoppel.
¶ 50. The Appellees argue that since Flowers received short-term disability benefits and unemployment benefits, he should be equitably estopped from receiving any disability benefits for the 2007 foot injury. “Under the doctrine of equitable estoppel, a party is precluded from denying any material fact, induced by his words or conduct upon which a person relied, whereby the person changed his position in such a way that injury would be suffered if such denial or contrary assertion was allowed.” Craig v. City of Yazoo City, 104 So.3d 172, 175 (¶ 8) (Miss.Ct.App.2012) (quoting Mayor & Bd. of Aldermen, City of Clinton v. Welch, 888 So.2d 416, 424 (¶ 43) (Miss.2004)). Equitable estop-pel “is an extraordinary remedy and should be applied cautiously and only when equity clearly requires it to prevent unconscionable results.” Long Meadow Homeowners’ Ass’n, Inc. v. Harland, 89 So.3d 573, 577 (¶ 12) (Miss.2012) (citing B.C. Rogers Poultry, Inc. v. Wedgeworth, 911 So.2d 483, 491 (¶26) (Miss.2005)).
¶ 51. Crown claims it relied on Flowers’s representation that his injury was not work-related when it awarded short-term disability benefits. Flowers testified that Dr. Varva’s office had filled out the original application for short-term disability that was denied, and that a Crown employee advised him to deny his injury was work-related in order to obtain benefits when filling out the second application. Therefore, the record does not suggest that Flowers purposely and fraudulently attempted to deceive Crown in an attempt to gain his benefits.
¶ 52. In Johnson Electric Automotive, Inc. v. Colebrook, 995 So.2d 791, 798 (¶ 19) *1023 (Miss.Ct.App.2008), this Court held that an employee was not entitled to an award of temporary disability benefits, as she had already received short-term disability benefits. Reasoning the employee had been compensated for the time she missed from work due to her injury, we concluded that the Commission did not err in refusing to award the temporary benefits for that time period. Id. However, our holding in Johnson does not affirmatively state that an award of temporary disability benefits is always precluded if the employee receives short-term disability benefits. Moreover, other than its claim for equitable estoppel, the Appellees have not provided this Court with any authority that the payment of short-term disability benefits requires the denial of workers’ compensation benefits. Accordingly, we find no merit to the Ap-pellees’ claim that the award of short-term disability precluded Flowers’s receipt of temporary disability payments.
¶ 53. We do note, however, that the AJ allowed Crown to deduct from his award of temporary total disability benefits any wages paid to Flowers during this period, but there was no clarification by the AJ if those wages included Crown’s payment of short-term disability benefits. In Price v. Omnova Solutions, Inc., 17 So.3d 104, 111 (¶ 24) (Miss.Ct.App.2009), this Court affirmed the Commission’s decision to grant an offset credit for short-term and long-term disability payments to the claimant since the evidence supported the finding that such payments “were advanced compensation payments.” Unlike the present case, however, the parties in Price provided the Commission with detailed records of short-term and long-term disability payments paid to the claimant to assist it in its determination. Although our current record does reflect that Flowers was paid wages through the end of 2007, there is no detailed evidence to suggest whether the short-term disability benefits paid to Flowers were in lieu of compensation. Nevertheless, since we are reversing on the issue of temporary total disability benefits, the parties have the opportunity to address the issue on remand as to whether the short-term disability payments would be considered in lieu of compensation and request clarification from the Commission as to whether this amount should be offset from any award of temporary disability benefits for the 2007 foot injury.
¶ 54. The Appellees also state that Flowers’s receipt of unemployment benefits from September 2008 through March 2008 shows that he was eligible for gainful employment. As we have found that there was not substantial evidence to support a finding of permanent total disability, this issue is moot. However, we observe Flowers only applied and received unemployment benefits because Crown did not allow him to come back to work. We find nothing unconscionable about this situation. This issue is without merit.
¶ 55. THE JUDGMENT OF THE CIRCUIT COURT OF PANOLA COUNTY IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANT/CROSS-APPEL-LEE AND THE APPELLEES/CROSS-APPELLANTS.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.

. Flowers does not appeal the AJ's findings concerning his claims from 1999, 2000, and 2005.

. We acknowledge our holding in Wesson v. Fred’s Inc., 811 So.2d 464, 470 (¶¶ 29-31) (Miss.Ct.App.2002), that the Commission's finding that the claimant had reached MMI on the date that his physician released him to work was not error. However, Wesson is distinguishable from the present case. It was stipulated that the two treating physicians in Wesson had assigned conflicting dates of MMI. Id. at 466 (¶ 4). Therefore, the issue was merely if the date of MMI that the Commission relied on was in error. In the present case, there is clearly no such evidence in the record.