IRVING, P.J.,
FOR THE COURT:
¶.1. Kearney Brown sustained injuries in an automobile accident that occurred during the course and scope of his employ-: ment as a patrol officer with the City of Jackson (the City). The City denied workers’ compensation benefits to Brown on the -basis that he exhibited a willful intent to injure himself. An administrative judge (AJ) found that Brown was entitled to benefits. The City appealed, and the Mississippi Workers’ Compensation Commission (Commission) affirmed the decision of the AJ, The City now appeals the. judgment of the Commission, asserting the following issues: (1) whether Brown intended to injure himself; (2) whether a “willful intent to injure” may be inferred from the facts of this case; and (3) even, if a “willful intent to injure” may not be inferred, whether benefits should be denied as. a matter of public policy. We affirm.
*192 FACTS
¶ 2. During the early morning hours of July 21, 2012, Brown, a patrol officer for the City, and several other officers were responding to a domestic call at an apartment complex when a fellow officer radioed for backup at a nightclub about a mile away. Brown and two other officers each got into their respective patrol cars and left the apartment complex to head to the scene. Brown was driving the last patrol car in the line of the three cars. Brown later testified that, just before the accident occurred, all three cars were moving at a steady pace. Brown contended that his car was about “two car lengths from ... the second vehicle” and that the first two vehicles “were not getting any more distance from [Brown] than [he was] from them.” All three patrol cars were moving “at a constant speed,” which Brown admitted was over the speed limit because they were responding to a call for backup. Brown later testified that there is “no specific protocol on responding to any person that’s in need of assistance, especially if it’s priority. You want to get there as safely and as fast as possible.” Crash data retrieved from Brown’s vehicle later determined that Brown’s speed had steadily increased from fifty-three miles per hour to ninety-one miles per hour in the twelve seconds just prior to the accident. Further, the crash data indicated that Brown had willfully caused that acceleration as evidenced by the fact that the gas pedal had been pressed during that time.
¶ 3. Brown testified that, as he was passing an intersection about 800 feet from the exit of the apartment complex, he spotted an item in the road and jerked the steering wheel to the right, causing his car to hit the curb on the right side of the road and the tail end of the car to slide. The car spun across the four-lane road and hit the left curb. At that point, Brown testified that there was a “big bump” and he lost consciousness. Brown was not wearing his seatbelt and was ejected from the vehicle. Subsequently, he was taken by ambulance to the hospital. As a result of the crash, Brown sustained injuries to his head, neck, left upper extremity, right upper extremity, and right ankle. Brown admitted that at the time of the accident, there was no traffic, the road was not wet, and the area was well lit.
¶ 4. In October 2012, Brown received a phone call from the City of Jackson Internal Affairs Division, during which he was told to resign or that he would be terminated for behaving negligently on the night of the accident. Brown resigned from his position shortly thereafter. Brown sought to have the City pay for his medical bills resulting from the accident; the City refused and Brown filed a petition to controvert. The City denied compensability, arguing that Brown exhibited a willful intent to injure himself.
¶ 5. Brown and the City presented proof at a hearing before the AJ. Brown conceded that the two cars in front of him did not swerve for an item in the road, as he claimed to have done. On cross-examination, an attorney for the City questioned Brown about a deposition he gave earlier, pointing out that Brown had previously maintained that he lost control of his car when he hit a bump in the road, rather than that he swerved to avoid missing an item in the road. Brown maintained that he could not recall whether he was wearing his seatbelt; however, the City attorney read from Brown’s deposition, wherein he stated that he was not wearing a seat-belt because his short height caused the seat belt to come across his neck, making it difficult to get in and out of the vehicle. Brown admitted that this was not the first time he had driven without a seatbelt. After Brown testified, the City called Tim *193 Corbitt, an accident reconstructionist, who testified regarding his personal assessment of Brown’s patrol car and the crash-data-retrieval software recovered from the car. Ultimately, the AJ found for Brown on the basis that the City presented “absolutely no credible evidence of ... a willful intent for Brown to injure himself.” The City filed a petition for review, and the Commission affirmed the AJ’s ruling, leading to this appeal.
DISCUSSION
¶ 6. “This Court’s scope of review in workers’ compensation eases is limited to a determination of whether the decision of the Commission is supported by substantial evidence.” Whirlpool Corp. v. Wilson, 952 So.2d 267, 271 (¶ 15) (Miss. Ct. App. 2006) (citation omitted). “The -Commission sits as the ultimate finder of fact; its findings are subject to normal, deferential standards upon review.” Id. (citation omitted). “We will only reverse the Commission’s rulings where findings of fact are unsupported by substantial evidence, matters of law are clearly erroneous, or the decision was arbitrary and capricious.” Id. (citation omitted).
¶ 7. Mississippi Code Annotated section 71-3-7(1) (Supp. 2016) provides that “[c]ompensation shall be payable for disability or death of an employee from injury ... arising out of and in the course of employment, without regard to fault as to the cause of the injury.” A compensable injury “means [an] accidental injury ... arising out of and in the course of employment without regard to fault which results from an untoward event or events, if contributed to or aggravated or accelerated by the employment in a significant manner.” Miss. Code Ann. § 71-3-3(b) (Rev. 2011). However, “[n]o compensation shall be payable ... if it was the willful intention of the employee to injure or kill himself or another.” Miss. Code Ann. § 71-3-7(4) (Supp. 2016).
¶ 8. The City maintains that Brown willfully intended to injure himself in the accident as evidenced by the fact that Brown purposefully drove at increased speeds while not wearing his, seatbelt; thus, the City contends that it is precluded from having to pay benefits under section 71-3-3(b). In response, Brown contends that there is no legal or factual basis for the City’s claim. We agree.
¶ 9. Brown testified that he was driving fast in order to quickly reach a fellow officer who was in need of assistance. He further testified that there was no protocol for responding to,officers requesting backup; rather, the objective was to provide assistance as quickly and safely as possible. We agree with the finding of the AJ and the Commission that there is no credible evidence to suggest that Brown willfully acted with the intent to injure himself. This issue is without merit.
¶ 10. In Linde Gas v. Edmonds, 167 So.3d 1258, 1265 (¶26) (Miss. Ct. App. 2014), this Court held that Edmonds, an employee of Linde Gas, was not precluded from receiving compensation for injuries sustained in a work-relatéd accident, despite the fact that he was not wearing his seatbelt and the employer’s evidence showed that he was speeding—driving between sixty-seven and ninety-two miles per hour in a fifty-five-mile-per-hour zone—at the time the accident occurred. This Court disagreed with Linde Gas’s assertion that Edmonds’s behavior—driving while having had only five hours of sleep the previous night, taking pain medication and then operating the company vehicle, and driving the vehicle without turning the lights on despite the fact that the sun had not yet risen—exhibited a willful intent to injure himself. Id. Further, this Court held:
*194 Linde Gas cites no authority that would equate Edmonds’s actions before and during the accident to willful intent. In fact, Linde Gas did not provide any evidence that would establish that ‘Ed-monds’s lack of sleep or consumption of pain medication would have caused the accident or demonstrate a willful intent to cause injury to himself.

Id.

¶ 11. The City attempts to distinguish Linde Gas from the case before us by pointing out that, in Linde Gas, Edmonds denied speeding and testified that he was driving the speed limit at the time of the accident; further, there was no evidence to indicate that Edmonds intended to speed. The City further points to Brown’s testimony that he was driving at speeds far above the speed limit and that he intended to do so. The City asserts that the crash data showed that Brown was pressing the gas pedal during the twelve seconds of rapid acceleration prior to the accident, and that Brown, himself, testified that he was driving quickly to reach the officer needing backup. Further, the City points out that Edmonds was only driving at a speed of seven to thirty-seven miles per hour above the speed limit, whereas Brown was driving at sixty miles per hour above the speed limit or more at the time of the accident.
¶ 12. We are unpersuaded by the City’s attempt to distinguish Linde Gas. The Linde Gas decision did not turn on the fact that' there was conflicting testimony regarding Edmonds’s speed at the time of the accident, or that there was a lack of evidence that Edmonds intended to speed. Rather, we held, supra, that Linde Gas cited no authority that would equate Ed-monds’s actions before and during the accident to willful intent to injure himself, nor was there any evidence establishing that Edmonds’s sleep deprivation or consumption of medication demonstrated a willful intent to cause injury to himself. This Court in Linde Gas did not intimate that, had the evidence shown without contradiction that Edmonds was intentionally speeding, the results would have been different. Linde-Gas’s burden there was the same as the City’s is here: to demonstrate or show that the injured employee willfully intended to injure himself.-Just as..Linde Gas failed to meet its burden there, the City has failed to meet its burden here.
¶ 13. The City also argues that even if there is no clear and direct evidence proving that Brown willfully intended to injure himself, willful intent may be inferred from Brown’s actions. In making this argument, the City acknowledges that there are no Mississippi cases construing the phrase “willful intention” that is used in section 71-3-7(4), which provides that workers’ compensation benefits may be denied to an injured employee if there is evidence that the employee willfully intended.to injure himself. However, citing a case from one of Florida’s courts of appeal, 391st Bomb Group v. Robbins, 654 So.2d 1200 (Fla. Dist. Ct. App. 1995), the City argues that willful intent may be inferred from serious or reckless conduct like that engaged in by Brown.
¶ 14. In Robbins, an employee who had just been fired from his employment injured himself as he was exiting the premises through a rear door. Id. The injury occurred when Robbins “pushed hard with an open hand on the security glass of the rear door, causing it to shatter. The window" was approximately [eighteen] inches square and comprised of wire mesh encased by layers of glass.” Id, at 1201.
¶ 15. The City’s reliance on Robbins is misplaced. In holding that Robbins had acted with willful intent to injure himself, the Robbins court stated: “The test (of wil[l]ful intent- to injure) should involve an *195 inquiry into (1) the existence of some premeditation and malice ..., coupled with (2) a reasonable expectation of bringing about real injury to himself or another.” Id. at 1202. The court then stated: “Here, we find that [Robbins’s] act ... was so serious and So likely to result in real injury that it must be construed to show willful intent.” Id. at 1202-03. Clearly, Brown’s actions are not analogous to Robbins’s. A person must surely intend to injure himself if he intentionally strikes a glass in a door with his bare hand with sufficient force to shatter the glass, because he knows that he is likely to be injured by the shards of glass.
¶ 16. Finally, the City argues that Brown should be precluded from receiving workers’ compensation benefits because it should be against public policy to award such benefits to a law enforcement officer who has engaged in conduct in reckless disregard for the safety of a person not engaged in criminal , conduct. In support of this argument, the City points to the provisions of . the Mississippi Tort Claims Act, which deny immunity to a law enforcement employee who in the course and scope of his employment engages in conduct in reckless disregard for the safety of a person not engaged in criminal, conduct. Miss. Code Ann. § ll-46-9(l)(c) (Rev.. 2012). We make two brief points in regard to this argument. First, it is the prerogatiye of the Mississippi Legislature, not the courts, to set the public policy of the state. Second, the Legislature has already spoken on this issue and has decided the public policy of the state: compensation benefits may be denied if the employee’s injury occurs as a result of the employee acting with willful intent to injure himself. This issue is without merit.
¶ 17. Since the record provides substantial evidence to support the finding of the Commission that Brown did not act with
the willful intent to injure himself, we affirm.
¶ 18. THE JUDGMENT OF THE'MISSISSIPPI WORKERS’ COMPENSATION COMMISSION IS AFFIRMED. ALL COSTS OF THIS APPEAL' ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.